

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 15, 2021

**VIA ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *United States v. Mauricio Hernandez Pineda*, S4 15 Cr. 379 (PKC)

Dear Judge Castel:

  Pursuant to the Court's order at the January 29, 2021 conference in this matter, the Government respectfully submits this letter regarding defense counsel's potential conflict of interest. The defendant is represented by Howard Leader, Esq., who formerly represented defendant Carlos Jose Zavala Velasquez ("Zavala Velasquez") in *United States v. Lobo, et al.*, 15 Cr. 174 (LGS), a related matter charged by this Office in 2016. As detailed below, the Government respectfully requests that the Court schedule a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982) and Federal Rule of Criminal Procedure 44(c) to address the potential conflict created by Mr. Leader's former representation of Zavala Velasquez. Defense counsel consents to this request.

## Applicable Law

  A defendant has a right under the Sixth Amendment to conflict-free legal representation. *See United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994). While the Sixth Amendment encompasses a defendant's right to be represented by the attorney of his choice, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988).

  District courts have two separate obligations where there is a possible conflict of interest. First, when a court is aware of the possibility of an attorney's conflict of interest, it has a threshold obligation to "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *Levy*, 25 F.3d at 153; *see also United States v. Kliti*, 156 F.3d 150, 153 (2d Cir. 1998). As the Second Circuit has explained:

> The trial court has an obligation to inquire into the facts and circumstances of an attorney's interests either in response to a timely conflict of interest objection or when it knows or reasonably should know of the possibility of a conflict of interest. Failure to engage in such an inquiry, when it is required, results in an automatic reversal. An inquiry allows the trial judge to determine the precise nature of the conflict and how to proceed, *i.e.*, whether to disqualify counsel, obtain a waiver from the defendant pursuant to *Curcio*, or take no action.

*United States v. Stantini*, 85 F.3d 9, 13 (2d Cir. 1996) (citations and internal quotation marks omitted).

Second, if the court determines that defense counsel has an actual or potential conflict of interest, the court has a "'disqualification/waiver' obligation" to determine whether the conflict is so severe as to obligate the Court to disqualify the attorney or a lesser conflict that can be waived in a *Curcio* hearing. *Kliti*, 156 F.3d at 153; *Levy*, 25 F.3d at 153.

An actual conflict is one that is so "severe" that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation . . . ." *Levy*, 25 F.3d at 153 (citing *United States v. Fulton*, 5 F.3d 605, 612-14 (2d Cir. 1993)). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (citations and internal quotation marks omitted). To show divergent interests, "[s]peculation is not enough." *Triana v. United States*, 205 F.3d 36, 42 (2d Cir. 2000). Nor is a "mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Where a conflict of interest is actual, "the court is obliged to disqualify the attorney." *Levy*, 25 F.3d at 153 (citing *Fulton*, 5 F.3d at 612-14).

A potential conflict of interest, by contrast, is a "lesser" conflict that exists where a court finds that "a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation . . . ." *Levy*, 25 F.3d at 153. An attorney has a potential conflict of interest if "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003) (quoting *Kliti*, 156 F.3d at 153 n.3) (internal quotation marks omitted). Conflicts "such as an attorney's representation of two or more defendants . . . are generally waivable." *Id.* at 127 (citation omitted). "Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he 'can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel.'" *Id.* (quoting *Fulton*, 5 F.3d at 613). "In the multiple representation situation, the defendant 'can be advised by independent counsel of the dangers' of such matters as 'one defendant's cooperating with the government,' and make a knowing and intelligent decision that he wishes to continue to be represented by his attorney despite the attorney's representation of another accused." *Id.* quoting *Fulton*, 5 F.3d at 613). If the defendant "can rationally opt to retain counsel of his choice despite

a conflict, the court conducts a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation." *Id.*

Regardless of the severity of the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993). Thus, in a particular case, "the court must balance the defendant's constitutional right against the court's need to preserve the highest ethical standards of professional responsibility." *United States v. Kerik*, 531 F. Supp. 2d 610, 614 (S.D.N.Y. 2008). The court "should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." *United States v. DiPietro*, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing *Wheat*, 486 U.S. at 163). "[I]n situations where a potential conflict exists, one that may ripen into an actual conflict as the trial progresses, district courts must have latitude to permit or deny a defendant's waiver of such conflict." *Jones*, 381 F.3d at 120; *see also Wheat*, 486 U.S. at 160 (providing that district courts have "substantial latitude" in determining whether to accept a conflict-of-interest waiver).

If a court determines that there exists a conflict that does not require disqualification, it "must conduct a *Curcio* hearing to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation." *Kliti*, 156 F.3d at 153; *see also Levy*, 25 F.3d at 153. The Second Circuit has set forth the requirements for such a *Curcio* hearing as follows:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*Perez*, 325 F.3d at 119.

## Discussion

Mr. Leader's representation of the defendant and prior representation of Zavala Velasquez creates a potential conflict of interest. Rule 1.9(c)(2) of the New York Rules of Professional Conduct provides that "[a] lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter … reveal confidential information of the former client protected by Rule 1.6 except as these Rules would

permit or require with respect to a current client." While Rule 1.9 is designed "for the protection of former clients,"[1] the Government respectfully submits that the Court should conduct a limited *Curcio* hearing in this matter related to Mr. Leader's prior representation of Zavala Velasquez.

Zavala Velasquez is a former member of the Honduran National Police (the "HNP") who was charged with participating in a conspiracy to import cocaine into the United States with other HNP officers. *See* 15 Cr. 174 (LGS), Dkt. 35. He retained Mr. Leader in approximately August 2016, and Mr. Leader represented him in connection with his guilty plea and sentencing. Zavala Velasquez eventually pled guilty to a Superseding Information charging him with participating in a conspiracy to import cocaine into the United States between 2009 and 2012. *See* 15 Cr. 174 (LGS), Dkt. 202. More specifically, the defendant admitted in connection with his plea that when he was a "police officer in Honduras" he had assisted others in transporting over 450 kilograms of cocaine. *See* 15 Cr. 174 (LGS), Dkt. 209, at 13-14. While the Court never officially relieved Mr. Leader from this representation, Mr. Leader has not appeared in that case since filing a motion on February 11, 2019 for Zavala Velasquez to proceed *in forma pauperis* on his appeal, which Judge Schofield denied. 15 Cr. 174 (LGS), Dkts. 367, 368. Zavala Velasquez ultimately withdrew his notice of appeal with prejudice on or about May 15, 2019. 15 Cr. 174 (LGS), Dkt. 375. Finally, on or about June 5, 2020, Zavala Velasquez filed a petition pursuant to 28 U.S.C. § 2255 alleging, among other things, ineffective assistance of counsel relating to Mr. Leader's representation. 15 Cr. 174 (LGS), Dkt. 446. The Government filed its opposition to this petition on October 26, 2020. 15 Cr. 174 (LGS), Dkt. 471.

The defendant in this case is a former high-ranking member of the HNP who conspired to import tons of cocaine into the United States with, among others, his cousin, Juan Antonio Hernandez Alvarado, a/k/a "Tony Hernandez." *See* 15 Cr. 379 (PKC), Dkt. 83. The defendant, like Zavala Velasquez, provided armed security and sensitive law enforcement information to their co-conspirators so they could evade detection and arrest while transporting tons of cocaine through Honduras. *Id.* While the Government is not currently aware of any direct connection between the defendant and Zavala Velasquez, they are members of the same conspiracy. In addition, they both abused their positions on the HNP to similar ends and may have interacted with other HNP members in common during their drug trafficking. Thus, Mr. Leader may have learned confidential information from Zavala Velasquez that would be helpful or relevant to the defendant but that the Rules of Professional Conduct prevent him from sharing with the defendant.

Based on the information currently known to the Government, Mr. Leader's former representation of Mr. Zavala Velasquez, to the extent it creates a conflict at all, falls into the category of potential conflicts that are "generally waivable" at a *Curcio* hearing. *See generally*

---

[1] Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Here, the Government has no reason to believe that the defendant's interests are materially adverse to Zavala Velasquez's and, thus, submits that Zavala Velasquez's informed written consent is not required at this time. If this changes in the future, the Government will promptly bring it to the Court's attention.

*United States v. Fan*, 36 F.3d 240, 247-49 (2d Cir. 1994).  Accordingly, the Government respectfully requests that the Court schedule a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation.  *See also* Fed. R. Crim. P. 44(c).  The Government respectfully requests that the Court include the proposed questions in Appendix A its examination of the defendant during the *Curcio* hearing.  Finally, the Government respectfully requests that the Court ensure that the defendant has had sufficient time to consider the issues and the risks posed by his attorney's representation, as well as an opportunity to consult independent counsel, prior to accepting any waiver.

    Respectfully submitted,

    AUDREY STRAUSS
    United States Attorney

    By:   /s/
    Jacob H. Gutwillig / Matthew Laroche
    Jason A. Richman / Elinor L. Tarlow
    Assistant United States Attorneys
    (212) 637-2215 / 2420 / 2589 / 1036

## The Government's Proposed *Curcio* Hearing Examination of
## <u>Mauricio Hernandez Pineda</u>

A. <u>Introductory Questions</u>

   1. How old are you?

   2. How far did you go in school?

   3. Do you currently consult a doctor or a mental health professional for any condition?

   4. Are you currently under the influence of alcohol or drugs of any kind?

   5. Do you understand what is happening today?

B. <u>Circumstances of Representation</u>

   1. Are you currently represented by Howard Leader?

   2. How long has Mr. Leader represented you?

   3. Have you been satisfied with the representation of Mr. Leader to date?

C. <u>Defendant's Understanding of the Conflict</u>

   1. Do you understand that in every criminal case, including this one, each defendant is entitled to be represented by an attorney whose loyalty to him is undivided, and who is not subject to any force or consideration that might in any way intrude upon the attorney's loyalty to his client's interests?

   2. Is your choice to be represented by Mr. Leader, a choice you have made freely and voluntarily, without any promises, threats, or inducements being made or offered to you?

   3. Do you understand that Mr. Leader previously represented a defendant named Carlos Jose Zavala Velasquez?

    4. Do you understand that Mr. Zavala Velasquez was charged with participating in a conspiracy to import cocaine into the United States as a member of the Honduran National Police, similar to the charges in your case?

    5. Do you understand that Mr. Zavala Velasquez pleaded guilty to participating in a conspiracy to import cocaine into the United States?

    6. Do you understand that, during his representation of Mr. Zavala Velasquez, Mr. Leader may have learned confidential information from Mr. Zavala Velasquez that could be relevant to your case?

    7. Do you understand that Mr. Leader is forbidden from revealing any such confidential information to you, or anyone else, in connection with your case?

    8. Do you understand that Mr. Leader may have obtained material in connection with that case that he cannot share with you?  For example, Mr. Leader may have obtained discovery material from the Government in that case that is subject to an order forbidding him from sharing it with anyone, including you.  Do you understand that?

D. <u>Defendant's Right to Conflict-Free Counsel</u>

    1. Do you understand that you have the right to object to the continued representation of Mr. Leader based upon the existence of a potential conflict of interest?

    2. It is important that you understand that no one, including the Court, can predict with any certainty the course that this case will take and that no one, including the Court, can foresee all the ways in which you may be disadvantaged by proceeding with Mr. Leader.  Do you understand that?

3. Do you agree that if the Court permits you to proceed with Mr. Leader, that in the event you are convicted, you will not be permitted to make any argument, on appeal or otherwise, based on the representation of Mr. Leader and the conflict, or potential conflict, we have discussed?  Do agree to waive, and give up, any argument of that kind?

4. To make sure you have understood what we have been discussing, please describe in your own words your understanding of the conflict or conflicts of interest that may arise in this case.

5. Have you spoken with any lawyer other than Mr. Leader about the risks of being defended by your current counsel in this case?  [*If yes*]  Without telling me what was said, please tell me the name of the lawyer or lawyers, other than Mr. Leader, with whom you spoke.  When did you speak with him/her/them?  For how long?

6. Do you understand that you have a right to consult with a lawyer other than Mr. Leader to determine whether you want Mr. Leader to continue representing you, and that the Court will give you an opportunity to do so?

7. Do you understand that, if you cannot afford other counsel, the Court will appoint counsel to consult with you about this conflict-of-interest issue and/or to represent you?  Do you understand that the Court encourages you to consult with another lawyer about this conflict-of-interest issue?

8. Is there anything that you wish to have explained further?

9. The Court will give you an opportunity to think about what you have been told, whether or not you would like to speak with separate counsel about it.  After you have thought it over, the Court will ask whether you have considered the matters

       that the Court has talked to you about. Then the Court will ask whether you wish to continue with Mr. Leader as your attorney. Would you like to speak with separate counsel about these issues? Do you need court-appointed counsel for the purpose of consulting with you about these conflict-of-interest issues?

   10. Would you prefer to adjourn today's proceeding until you can give more thought to this matter?

E. Continuation of the *Curcio* Hearing

   1. After considering all that the Court has said about the ways in which continuing with Mr. Leader as your counsel, do you believe that it is in your best interest to continue with Mr. Leader as your attorney?

   2. Is that your wish?

   3. Do you understand that by choosing to continue with Mr. Leader as your attorney, you are waiving your right to be represented solely by an attorney who has no potential conflict of interest?

   4. Are you knowingly and voluntarily waiving your right to conflict-free representation?

   5. Do you agree to waive any post-conviction argument, on appeal or otherwise, that by virtue of having an attorney who is the subject of an ongoing federal criminal investigation, you were denied effective assistance of counsel?

   6. Is there anything that the Court has said that you wish to have explained further?