```
                                                                        1
     L47KPINC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              15 CR 379 (PKC)

5    MAURICIO HERNANDEZ PINEDA,

6                   Defendant.

7    ------------------------------x
                                               New York, N.Y.
8                                              April 7, 2021
                                               2:10 p.m.
9

10
     Before:
11
                     HON. P. KEVIN CASTEL,
12
                                               District Judge
13
                          APPEARANCES
14
     AUDREY STRAUSS,
15        Acting United States Attorney for the
          Southern District of New York
16   ELINOR L. TARLOW
          Assistant United States Attorney
17
     HOWARD R. LEADER
18        Attorney for Defendant

19   MATTHEW J. KLUGER
          CJA Attorney on Duty for Defendant
20

21   ALSO PRESENT:  JILL HOSKINS, Spanish Interpreter

22

23

24

25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

1           (Case called)
2           THE DEPUTY CLERK:  For the government?
3           MS. TARLOW:  Good afternoon, your Honor.  Elinor
4  Tarlow, for the government.
5           THE COURT:  Good afternoon, Ms. Tarlow.
6           And for the defendant?
7           MR. LEADER:  Good afternoon, your Honor.  Howard
8  Leader, for Mr. Hernandez Pineda.
9           THE COURT:  All right.  Good afternoon, Mr. Leader.
10          And also present, in addition to Mr. Mauricio
11 Hernandez Pineda, is Mr. Matt Kluger, of our Criminal Justice
12 Act Panel, who has graciously accepted appointment as counsel
13 with respect to the matter at hand, which is exploring a
14 potential conflict of interest.
15          Good afternoon, Mr. Kluger.
16          MR. KLUGER:  Good afternoon, your Honor.  Good to see
17 you.
18          THE COURT:  Good to see you.
19          The circumstance that brings us together is that
20 Mr. Leader formerly represented, perhaps presently represents,
21 Carlos Jose Zavala Velasquez in a case before Judge Schofield,
22 United States against Lobo, 15 CR 174, and Mr. Mauricio
23 Hernandez Pineda is, or was at one point, allegedly a member of
24 the Honduran National Police, as was Mr. Zavala Velasquez, and
25 the government contends that they are both part of the same

1  conspiracy, although, as I understand it, they make no
2  particular representation about any interactions between the
3  two, and the purpose of today's proceeding is to explore
4  whether there is a disqualifying conflict of interest, whether
5  there's a waivable conflict of interest, and whether the
6  defendant wishes to waive that conflict.
7  　　　　　So, Mr. Hernandez Pineda, in a moment, I'm going to
8  place you under oath, and ask you certain questions, and inform
9  you of certain facts.  If I ask you something, or I tell you
10 something, and you don't quite understand, please let me know,
11 and I will put it into different words.
12 　　　　　Do you understand that, sir?
13 　　　　　THE DEFENDANT:  Yes.
14 　　　　　THE COURT:  All right.
15 　　　　　Please raise your right hand, and the clerk will
16 administer the oath.
17 　　　　　(Defendant sworn)
18 　　　　　THE COURT:  You're now under oath, and your answers to
19 my questions are subject to the penalties of perjury or of
20 making a false statement if you do not answer truthfully.
21 Also, anything you say today may be used in any such
22 prosecution.
23 　　　　　Do you understand all of that?
24 　　　　　THE DEFENDANT:  Yes, your Honor.
25 　　　　　THE COURT:  All right.

4
L47KPINC

1                How old are you, sir?

2                THE DEFENDANT:  Forty-nine.

3                THE COURT:  How far did you go in school?

4                THE DEFENDANT:  College.

5                THE COURT:  Thank you.

6                Are you now, or have you recently been, under the care

7      of a medical doctor?

8                THE DEFENDANT:  Yes.  I get daily medical attention

9      for cholesterol and high blood pressure.

10               THE COURT:  All right.

11               Have you ever been treated for mental illness?

12               THE DEFENDANT:  No.

13               THE COURT:  Have you ever been addicted to any

14     substance?

15               THE DEFENDANT:  No, sir.

16               THE COURT:  All right.

17               Well, how do you feel today?

18               THE DEFENDANT:  Not that well, because last week, I

19     got the news that my brother passed away, but I am okay.

20               THE COURT:  I'm sorry to hear that.  Would you like to

21     adjourn today's proceeding to another date?

22               THE DEFENDANT:  No.

23               THE COURT:  All right.

24               Do you understand what's happening today?

25               THE DEFENDANT:  Yes, yes.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1            THE COURT:  All right.
2            Mr. Leader, any doubts as to the defendant's
3   competence to proceed?
4            MR. LEADER:  No, your Honor.
5            THE COURT:  Mr. Kluger, you've had a chance to meet
6   with the defendant, correct?
7            MR. KLUGER:  Yes, Judge.
8            THE COURT:  All right.  Any doubts as to his
9   competence?
10           MR. KLUGER:  No, Judge.
11           THE COURT:  All right.  I find that the defendant is
12  fully competent to proceed.
13           Now, you are presently represented by Mr. Leader; is
14  that correct?
15           THE DEFENDANT:  Yes, sir.
16           THE COURT:  How long have you known Mr. Leader?
17           THE DEFENDANT:  Approximately 11 months.
18           THE COURT:  All right.
19           And throughout that period, has he acted as your
20  lawyer?
21           THE DEFENDANT:  Yes, sir.
22           THE COURT:  All right.
23           Are you satisfied with Mr. Leader's representation of
24  you?
25           THE DEFENDANT:  Yes, sir.

1              THE COURT:  All right.

2              Now, you have the right to be represented by counsel

3     in this proceeding.  That right gives you the right to select a

4     lawyer and retain a lawyer, as you have done in the case of

5     Mr. Leader, who is admitted to practice in this court, and he's

6     a lawyer of your own choosing.  The Court must be satisfied

7     that Mr. Leader's representation of other clients does not

8     jeopardize the integrity of the trial process and does not

9     present a conflict which would make it inappropriate for him to

10    represent you.

11             Do you understand that?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Now, Mr. Leader, please, if you will, just

14    describe your representation of Mr. Zavala Velasquez, and

15    approximately when that began, and if it's ended, and how it

16    ended, and the like.

17             MR. LEADER:  Yes, your Honor.

18             My best recollection is that I ended representing

19    Mr. Zavala Velasquez in February of 2019.  I had represented

20    him in connection with the conspiracy described earlier, a

21    similar case, to import drugs into the United States, before

22    Judge Schofield, on 15 CR 174, as you've indicated, your Honor.

23    I represented him while the case was pending before the

24    district court, and after he was sentenced, he directed me to

25    file a notice of appeal, which I did.  He then agreed

1  subsequently to withdraw the appeal.  And I think that the
2  government represents, in its letter to the Court dated
3  March 15th, that that appeal was basically withdrawn, I think
4  in 2019.  I can advise the Court that I haven't represented him
5  since then.  I have had some communication with him
6  subsequently, which I think the Court should know and
7  Mr. Hernandez Pineda should know.  That was with respect to
8  securing him a copy of his file, which obviously he was
9  entitled to, and I was happy to provide.  That was actually in
10 January of this year.  That is, as best as I can recall, the
11 last communication I have had with him, but I have not
12 represented him, I think, since February of 2019.
13            THE COURT:  Now, I only know what I read, but I'm
14 advised that he has filed a motion to vacate or modify his
15 sentence and has alleged ineffective assistance of counsel in
16 that regard.  Is that correct?
17            MR. LEADER:  That's my understanding, yes, your Honor.
18            THE COURT:  All right.
19            Is it correct that you do not represent him with
20 respect to that?
21            MR. LEADER:  That is quite correct, your Honor, yes.
22            THE COURT:  For the sake of good order, do you have
23 any objection to making an application to Judge Schofield to
24 have your role as attorney formally terminated on the record?
25 Because right now, as it stands, you're counsel of record, that

1  never had an end to it, as such, although the defendant was
2  sentenced, but it would seem, for the sake of good order, that
3  that should take place.
4          MR. LEADER:  Very well, your Honor.  I will attend to
5  that.
6          THE COURT:  All right.
7          Now, let me hear from the government.  Is there
8  anything material to today's discussion that the government
9  wants to state about the prosecution of Mr. Zavala Velasquez
10 that has not been stated on the record by Mr. Leader or by me?
11         MS. TARLOW:  No, your Honor.  We have stated the
12 details in our letter as well, and that's all we would ask the
13 Court to consider.
14         THE COURT:  But what I'm here today to do is to make
15 sure that Mr. Hernandez Pineda knows it.  So if there's
16 something in your letter --
17         MS. TARLOW:  Yes, your Honor.
18         THE COURT:  -- that hasn't been mentioned by me or by
19 Mr. Leader, I call upon you to tell me what that is, so the
20 defendant can hear it in this courtroom.
21         MS. TARLOW:  Yes, your Honor.
22         The only potential conflict that we see is that
23 Mr. Leader may have had some information that he has learned
24 from his prior client in the course of representing that client
25 that may relate to the defendant in this case's conduct, and he

would not be able to describe that information to this defendant because he would be barred from the rules of privilege.

    THE COURT: All right.

    MR. LEADER: If I may?

    THE COURT: Yes.

    MR. LEADER: There's one other thing that may be helpful to my client here.

    THE COURT: Yes.

    MR. LEADER: The two cases, one involving Mr. Zavala Velasquez and the other one involving Mr. Hernandez Pineda, as I understand it, are two separate conspiracies. They bear certain similarities, as both conspiracies centered on drugs being sent via Honduras into this country, and both Mr. Zavala Velasquez and Mr. Hernandez Pineda were both members of the Honduran National Police, but the conspiracies themselves, I think, are quite separate. And I don't know -- I hope, rather, that it's helpful to my client.

    THE COURT: Well, let me state on the record — and I will hear from both of you on this — there are such things as an indicted conspiracy. The indicted conspiracy in the present case may or may not be different than the indicted conspiracy in Judge Schofield's case, but that is not the same as saying that two individuals were not members of the same conspiracy. They can be members of the same conspiracy, even though they

never met one another, if they joined the conspiracy with knowledge of at least one other member and joined with the purpose of furthering the illegal object of that conspiracy, and it needs to be during the same relevant period of time. And this comes up often in criminal trials, because it may be a seeming hearsay statement that isn't hearsay because it relates to an uncharged conspiracy, for example. So, not all conspiracies are prosecuted in a courtroom. They, nevertheless, may be a conspiracy. And if I read the government's letter correctly, I believe they said that they believe that they were members of the same conspiracy.

Is that correct?

MS. TARLOW: Yes, your Honor.

THE COURT: Are you disputing that, Mr. Leader? Where is that in your letter?

I see it. It's the second full paragraph on page 4.

MR. LEADER: I see that now. Thank you, your Honor, for pointing that out.

THE COURT: The government states, "While the government is not currently aware of any direct connection between the defendant and Zavala Velasquez, they are members of the same conspiracy."

So, Mr. Hernandez Pineda, you're entitled to the effective representation of counsel in this case, counsel, a lawyer, who has undivided loyalty to you. The concern here is,

1    because of Mr. Leader's former representation of Mr. Zavala
2    Velasquez, that he may have divided loyalty, that he may be
3    hesitant to vigorously examine a witness at trial on certain
4    subjects because it might bring out information that would be
5    hurtful to Mr. Zavala Velasquez.
6              Do you understand that?
7              THE DEFENDANT:  Yes, sir.
8              THE COURT:  And do you understand that he may have
9    information that he learned from Mr. Zavala Velasquez that
10   could be very helpful to you, but because of the Rules of
11   Professional Conduct, he's not allowed to use that information
12   or disclose that information?
13             Do you understand that?
14             THE DEFENDANT:  Yes, sir.
15             THE COURT:  All right.
16             Has anyone threatened you or forced you in any way to
17   keep Mr. Leader as your lawyer?
18             THE DEFENDANT:  No, sir.
19             THE COURT:  Has anyone promised you anything, or given
20   you anything of value, to keep Mr. Leader as your lawyer?
21             THE DEFENDANT:  No, sir.
22             THE COURT:  Do you understand that Mr. Zavala
23   Velasquez, Mr. Leader's other client, pleaded guilty to
24   participating in a conspiracy to import cocaine into the United
25   States?

1          Do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And do you understand that he is forbidden
4     to disclose any confidential information that he learned from
5     Mr. Zavala Velasquez that could be relevant to your case?  Do
6     you understand that?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Do you understand that he may have
9     obtained material in connection with the other case that he
10    cannot share with you?  He may have obtained discovery material
11    from the government in that case, but may be prohibited from
12    sharing that with you because of a court order.

13         Do you understand that?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Now, have you spoken to Mr. Leader about
16    this situation in private?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  All right.

19         Now, have you spoken to Mr. Kluger, who is seated to
20    your right, about this situation?  Have you spoken to him about
21    it?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Have you asked him questions?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  And did he answer them to your

1    satisfaction?
2             THE DEFENDANT:  Yes, sir.
3             THE COURT:  And did you ask Mr. Leader questions?
4             THE DEFENDANT:  Yes, sir.
5             THE COURT:  And did he answer them satisfactorily to
6    you?
7             THE DEFENDANT:  Yes, sir.
8             THE COURT:  Now, what is your desire?  Do you wish
9    Mr. Leader to continue as your counsel, or would you like
10   another lawyer?  If you cannot afford another lawyer, the Court
11   will appoint one at public expense.  What do you want to do in
12   this case?
13            THE DEFENDANT:  I would like to continue having
14   Attorney Leader as my defense attorney.
15            THE COURT:  All right.
16            Do you understand that by choosing to continue with
17   Mr. Leader as your attorney, you are waiving your right, giving
18   up your right, to be represented solely by an attorney who has
19   no potential conflict of interest?
20            Do you understand that?
21            THE DEFENDANT:  Yes, sir.
22            THE COURT:  Are you knowingly and voluntarily waiving
23   your right to a conflict-free lawyer?
24            THE DEFENDANT:  Yes, sir.
25            THE COURT:  Do you understand that your waiver will

1   apply at all stages, including now, at trial, if you should
2   happen to be convicted, at sentencing, on appeal, or at any
3   other proceeding or investigation?  You will waive for all time
4   any claim that you were denied the effective assistance of
5   counsel because your counsel had a conflict of interest.
6              Do you understand you're giving that up for all time?
7              THE DEFENDANT:  Yes, sir.
8              THE COURT:  All right.
9              Do you have any desire to put off a final decision on
10  this to another day?
11             THE DEFENDANT:  No.
12             THE COURT:  Do you have any desire to speak in private
13  with Mr. Kluger further on this subject, to ask him any other
14  questions in private?
15             THE DEFENDANT:  No, sir.
16             THE COURT:  Do you have any desire to speak in private
17  with Mr. Leader further on this subject?
18             THE DEFENDANT:  No, sir.
19             THE COURT:  All right.
20             Please tell me, in your own words, what you understand
21  the possible conflict of interest to be as to Mr. Leader.
22             THE DEFENDANT:  I understand that Mr. Leader
23  represented Mr. Zavala Velasquez, and because he represented
24  him, he could have some information that could be helpful to
25  me, but because of ethical considerations, he can't share with

1    me.

2              THE COURT:  All right.  Go ahead.

3              THE DEFENDANT:  And I want to give that up.

4              THE COURT:  Okay.

5         And that also extends to the other thing we talked

6    about — maybe he wouldn't be as vigorous in questioning

7    witnesses because he wanted to protect Mr. Zavala Velasquez.

8    Do you understand that?

9              THE DEFENDANT:  Yes, yes, yes.

10             THE COURT:  All right.

11        Do you have any questions for me?

12             THE DEFENDANT:  No, sir.

13             THE COURT:  And, Mr. Kluger, do you want to briefly

14   state on the record what the nature of your interaction was

15   here?

16             MR. KLUGER:  Yes, Judge.  Thank you.

17        Judge, prior to this afternoon's hearing, I had the

18   opportunity to meet with Mr. Hernandez Pineda together with the

19   court interpreter.  We reviewed, essentially, the same matters

20   and questions that your Honor discussed with

21   Mr. Hernandez Pineda, we discussed the nature of the potential

22   conflict.  I indicated to Mr. Hernandez Pineda that I wasn't

23   aware of any actual conflict, but we did discuss the potential

24   for conflict because of Mr. Leader's prior representation of

25   Mr. Velasquez.  I answered any questions that

1  Mr. Hernandez Pineda had. He indicated he wanted a little more
2  time to think about it. He thought about it, he had about
3  another half an hour before we came up to court. I told him
4  that your Honor would essentially go through all the questions
5  again with him, and that if he had any questions, he could
6  certainly ask your Honor, and that I indicated to him that if
7  he did need more time, the Court would give him more time, and,
8  apparently, he doesn't need any more time. And I think that
9  his decision is intelligently and voluntarily made.
10             THE COURT: All right.
11             Does the government have any further inquiry that it
12 wishes the Court to make?
13             MS. TARLOW: No, your Honor. Thank you.
14             THE COURT: All right.
15             I find that the defendant's waiver of any potential or
16 actual conflict arising out of Mr. Leader's representation of
17 Mr. Zavala Velasquez is knowing, intelligent, and voluntary,
18 and it is accepted.
19             The Court thanks Mr. Kluger for his assistance in this
20 matter, and, with the thanks of the Court, you have completed
21 your assignment. So, thank you.
22             MR. KLUGER: You're welcome, Judge.
23             THE COURT: What is the next step in this case?
24             MS. TARLOW: Your Honor, I believe we have to set
25 another conference date. The defendant is reviewing discovery.

1  I spoke with Mr. Leader before this hearing, that he was kept
2  on as counsel, and the parties conferred and think, if it is
3  acceptable to your Honor, that we would set a conference in
4  approximately 60 days to allow the defendant to review
5  discovery and to engage in pretrial disposition discussions.
6             MR. LEADER:  Yes, your Honor, Ms. Tarlow is correct,
7  we would request that.
8             THE COURT:  All right.  Let's see what we can do for a
9  date.
10            MR. LEADER:  Thank you, your Honor.
11            THE DEPUTY CLERK:  June 8th, at 2:30, in court.
12            MS. TARLOW:  That's fine for the government.
13            MR. LEADER:  Yes, your Honor.
14            THE COURT:  Okay.
15            And I will hear the government's application.
16            MS. TARLOW:  Your Honor, we would seek to exclude time
17 until June 8th for the bases that I described — the defendant
18 needs to review discovery and the parties are continuing to
19 engage in pretrial disposition discussions.
20            MR. LEADER:  No objection, your Honor.
21            THE COURT:  Thank you.
22            I find that the ends of justice will be served by
23 granting a continuance to June 8th, and that the need for a
24 continuance outweighs the best interests of the public and the
25 defendant in a speedy trial.  The reasons for my finding are

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18
L47KPINC

1    that the time is needed to enable defense counsel and the
2    defendant to review discovery materials, to discuss them, to be
3    in a position to return to court to advise if there are any
4    motions the defendant wishes to make, and also to enable the
5    parties to engage in certain discussions.  Accordingly, the
6    time between today and June 8, 2021, is excluded under the
7    Speedy Trial Act.
8             Anything further from the government?
9             MS. TARLOW:  No, your Honor.
10            THE COURT:  From the defendant?
11            MR. LEADER:  Not from us.  Thank you, your Honor.
12            THE COURT:  Thank you, all, very much.  We are
13   adjourned.
14            MR. LEADER:  Thank you.
15            MS. TARLOW:  Thank you, your Honor.
16                              * * *

L47KPINC
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300