L4CASALCps

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA,

        v.                                    (S5) 15-cr-379 (PKC)

OTTO RENE SALGUERO MORALES and
RONALD ENRIQUE SALGUERO PORTILLO,
et al.,

              Defendants.              Conference

------------------------------------x

                              New York, N.Y.
                              **(remote)**

                              April 12, 2021
                              10:55 a.m.


Before:

                    HON. P. KEVIN CASTEL

                              District Judge


                      APPEARANCES

AUDREY STRAUSS
     United States Attorney for the
     Southern District of New York
BY:  DANIEL NESSIM
     KYLE A. WIRSHBA
     Assistant United States Attorneys

LAW OFFICES OF ROBERT FEITEL, P.L.L.C.
     Attorneys for Defendant Salguero Morales
BY:  ROBERT FEITEL

LINDA GEORGE
     Attorney for Defendant Salguero Portillo


Also Present:  Cristina Weisz

L4CASALCps

```
 1            (Remote)
 2            THE COURT:  This is United States v. Ronald Enrique
 3   Salguero Portillo and Otto Salguero Morales.  Appearing for the
 4   government?
 5            MR. WIRSHBA:  Good morning, your Honor.  Kyle Wirshba
 6   for the government.  And I want to apologize.  I understand
 7   that I missed an email moving this conference up one day, and I
 8   am tardy, and I apologize for that to the Court, and to defense
 9   counsel, and to defendants.  My apologies.
10            THE COURT:  Well, I appreciate the apology.  It's a
11   little bit distressing, particularly in a case that is so well
12   staffed by the government.  So I'm just -- OK.  I thank you for
13   that.
14            So let me hear from counsel for Ronald Enrique
15   Salguero Portillo.
16            MS. GEORGE:  Good morning, your Honor.  Linda George
17   on behalf of Ronald Enrique Salguero Portillo.
18            THE CLERK:  All right.  Good morning, Ms. George.
19            And appearing for Otto Salguero Morales?
20            MR. FEITEL:  Good morning, your Honor.  Robert Feitel
21   for defendant Otto Salguero.
22            THE COURT:  All right.  Good morning, Mr. Feitel.
23            Now, let me begin with Ms. George.  Your client, is
24   your client on the line, or is your client waiving his
25   appearance in this conference?
```

L4CASALCps

1          MS. GEORGE:  He is on the line, assisted by the

2     interpreter.

3          THE COURT:  All right.  Ronald Enrique Salguero, can

4     you hear me?

5          DEFENDANT SALGUERO PORTILLO:  Yes.  Yes.

6          THE COURT:  All right.  Now, I've been advised that

7     you wish to waive your physical appearance at this conference

8     and proceed this morning by telephone.  Is that correct, sir?

9          DEFENDANT SALGUERO PORTILLO:  Yes, yes.

10          THE COURT:  All right.  If at any point in today's

11     proceeding you want to speak in private with your lawyer,

12     Ms. George, I'll give you the opportunity to do so.  Do you

13     understand that?

14          DEFENDANT SALGUERO PORTILLO:  Yes, yes.

15          THE COURT:  Thank you.

16          Mr. Otto Salguero, I've been advised that you wish to

17     waive your right to be physically present for this proceeding

18     and to proceed instead by telephone.  Is that correct, sir?

19          DEFENDANT SALGUERO MORALES:  Yes, your Honor.

20          THE COURT:  All right.  If at any point today you wish

21     to speak in private with your attorney, Mr. Feitel, I'll give

22     you an opportunity to do that.  Do you understand that?

23          DEFENDANT SALGUERO MORALES:  Yes.

24          THE COURT:  All right.  And I find that this

25     conference cannot be further delayed without substantial harm

L4CASALCps

1    to the interests of justice, because it is important that this

2    case proceed, a motion schedule be set if one is necessary and,

3    if not, further proceedings in this case can be set.

4            So let me hear from Ms. George.  Well, first of all,

5    let me have the government confirm that discovery is complete

6    in this case.

7            MR. WIRSHBA:  Yes, your Honor.  Rule 16 is complete in

8    this case.

9            THE COURT:  All right.  And you've already

10   acknowledged your *Brady* obligations; is that correct?

11           MR. WIRSHBA:  That's correct, your Honor.  And I

12   believe there is an order on the docket.

13           THE COURT:  All right.

14           Now, Ms. George, are there any motions that your

15   client wishes to make in this case?

16           MS. GEORGE:  Well, first of all, your Honor, I sent

17   two letters to the government requesting additional discovery,

18   which have not been responded to, so therefore, third time

19   around, I just filed a motion requesting additional discovery;

20   I can't really determine what motions will be necessary until I

21   get a little bit more discovery.  Basically, I would like to

22   know what my client did and what he didn't.  The only thing

23   that I've been given that pertains to my client, quite frankly,

24   is testimony from a cooperator, Ardon Soriano, who makes some

25   statements at a trial.  So what I've asked for is what else is

L4CASALCps

1    there.  And I've also asked, since the government did provide

2    me with the admitted exhibits that were used at that trial,

3    U.S. v. Hernandez Alvarado, I would like to have whatever else

4    was provided in discovery there.  Perhaps that would enlighten

5    me further.  I'm not sure why I only have the admitted

6    exhibits.  But there's also a list of other things that I

7    requested.

8              So I would ask, if the Court would give us another 60

9    days, maybe for the government to respond to my additional

10   discovery requests and at that time be in a better position to

11   advise the Court as to what motions that I believe are

12   necessary to file.  And I say that also because I need time to

13   meet with the defendant once I get some of this other

14   information.  And it's been difficult to get these in-person

15   visits at MCC.  You have to go and get an appointment now, and

16   as an example, I requested one last thing, I still don't have

17   confirmation on it, because I'd like to see him next week a

18   couple of days.

19             So these are some of the things that I've been dealing

20   with in terms of time.  So I would ask the Court to consider

21   maybe another 60 days and perhaps the government can respond

22   one way or another.  I mean, if they agree to give it to me,

23   fine; if they don't want to give it to me, tell me why not.

24   And then I know where to go from there.

25             THE COURT:  Let's hear from the government in terms

L4CASALCps

1    of, this is -- I'm looking at your motion, and it looks like

2    it's a motion for a bill of particulars.  You also move to

3    compel production of certain documents.  I assume, Ms. George,

4    you're thoroughly familiar with the law in this circuit on

5    bills of particulars.

6              MS. GEORGE:  Yes, I am.

7              THE COURT:  Yes.

8              MS. GEORGE:  But, but --

9              THE COURT:  Go ahead.

10             MS. GEORGE:  If I may, your Honor, the point of

11   requesting also a bill of particulars from the government is

12   hopefully to engage in some kind of conversation which will let

13   me know what additional items, what is out there.  I can't

14   speak to them on the phone.  The only thing I can do is send a

15   letter, and when I don't receive a response to my letter, then

16   I file a motion.  I don't know what else to do.  I just want

17   the record to be clear.

18             THE COURT:  OK.  So just help me out here.  You're not

19   getting your phone calls returned, or what do you mean, you

20   can't speak to them on the phone?

21             MS. GEORGE:  I sent an email to contact me about

22   discovery and I sent a letter to provide me additional, and no

23   one calls me back.  I mean, there's five things.

24             THE COURT:  I understand.  So I want to hear from the

25   government.  Is this true?  And why haven't you gotten back to

L4CASALCps

1   Ms. George?

2           MR. WIRSHBA:  Your Honor, we have not responded in

3   writing to Ms. George's letters, but I want to be clear that we

4   have had several phone conversations with Ms. George.  I do

5   want to point out that --

6           THE COURT:  What was the most recent conversation?

7   Let's get to the bottom of this right now.  What was the most

8   recent conversation?

9           MR. WIRSHBA:  I believe it was in December, your

10  Honor.

11          THE COURT:  All right.  And, Ms. George, did you send

12  emails requesting a conversation with the government after

13  December?

14          MS. GEORGE:  My letter was sent on January 25, 2021.

15  I sent the letter December 10, 2020, and a letter January 25,

16  2021.

17          THE COURT:  Did you ask for discovery, or did you ask

18  to talk to them on the phone?

19          MS. GEORGE:  Both.  My letters -- I requested

20  discovery and I'm available to discuss.  I don't -- you know,

21  not, not that difficult.

22          THE COURT:  Well, no, but I got a different flavor

23  from you a moment ago.  The flavor I got was that you had

24  emailed them and said, please contact me to discuss discovery.

25          MS. GEORGE:  My emails were prior to the conversations

L4CASALCps

we had.  Then I took a lot of time to go through the discovery
that was provided to me because I am also -- I also represented
another defendant, and I have other discovery on a somewhat
related matter, I suppose.  But in any event, so I -- there's a
lot to go through here.  And I'm trying to focus in on exactly
what are -- what is my client's, Mr. Salguero's, involvement in
the conspiracy charged.  And so, I don't know, it can't be just
the testimony of Mr. Ardon.  There seems to be a lot of other
stuff here that I'm not getting a copy of.  I don't know.

THE COURT:  All right.  Now, you mentioned
representing a client in a related matter?

MS. GEORGE:  Yes.  I represent Avila Meza, Juan Manuel
Avila Meza in a matter before Judge Schofield.  And that also
involves a police officer out of Honduras.  So I'm familiar
with some of it.

THE COURT:  Hang on a second.  Hang on a second.  Just
last week, I had a *Curcio* hearing relating to Howard Leader,
who represented Mr. Pineda in my case and represented another
member of the Honduran National Police in a case before Judge
Schofield, and that was deemed to require a *Curcio* hearing.
Why is a *Curcio* hearing not necessary here?

MS. GEORGE:  I guess the government should express
their opinion -- I don't think it's required, but maybe the
government has a different opinion or maybe the government can
say why it's not required.

L4CASALCps

| | |
|---|---|
| 1 | THE COURT:  Well, I mean, let me –– the conflict, if |
| 2 | there's a potential conflict, would be one best known to you, |
| 3 | and Ronald Enrique Salguero is a former member of the Honduran |
| 4 | National Police? |
| 5 | MS. GEORGE:  No. |
| 6 | THE COURT:  No? |
| 7 | MS. GEORGE:  No.  Ronald Enrique Salguero is a |
| 8 | Guatemalan national. |
| 9 | THE COURT:  I see. |
| 10 | MS. GEORGE:  My other client was a member of the |
| 11 | Honduran National Police.  I don't believe it has any |
| 12 | connection with anything.  But only the government can say |
| 13 | that.  That's for sure. |
| 14 | THE COURT:  OK.  Well, they may be of help on this. |
| 15 | So let me –– but I see your point that we may be talking about |
| 16 | matters that are just simply not related, other than as to |
| 17 | subject matter. |
| 18 | Does the government have a view as to whether there is |
| 19 | a potential conflict with Ms. George's representation of the |
| 20 | individual in the case before Judge Schofield? |
| 21 | MR. WIRSHBA:  Your Honor, I do not have a view at this |
| 22 | present time, but I would ask, with the Court's permission, |
| 23 | that the government be given an opportunity to just discuss |
| 24 | that case with the prosecutors who are handling it to ensure |
| 25 | that there is no potential conflict in our view.  I personally |

L4CASALCps

1    was not aware of that potential -- of that issue, and so I

2    would like the opportunity to speak with some of my colleagues

3    about it, with the Court's permission.

4         THE COURT:  All right.  And I think Ms. George is

5    entitled and I am entitled for you to have you write a letter

6    within 14 days stating your position.

7         MR. WIRSHBA:  Absolutely, your Honor.  And, your

8    Honor, whenever your Honor plans to get back to it, there was

9    one more thing that Ms. George mentioned that I want to make

10   sure that we clarify for the Court, and frankly for Ms. George,

11   if that would be all right.

12        THE COURT:  Yes.  Go ahead.  Go ahead.

13        MR. WIRSHBA:  OK.  Thank you, your Honor.

14        So, your Honor, Ms. George mentioned that she had not

15   received any responses to her discovery letters, including that

16   she hadn't received the discovery from the Hernandez trial, but

17   in fact on January 14th of this year, the government returned a

18   one terabyte hard drive to Ms. George that had on it, amongst

19   other materials, the discovery in that case, just as Ms. George

20   requested, as well as the phone extraction that we had

21   discussed with Ms. George, and certain limited other 3500

22   material that we had discussed with Ms. George.  That was sent

23   to her email on January 14th by a paralegal in my office,

24   Morgan Hearst, copying me.  And so, your Honor, the

25   government --

L4CASALCps

1          THE COURT:  Just pause.  Just wait a minute.

2          MR. WIRSHBA:  Yes.

3          THE COURT:  So this was requested by Ms. George, and

4   it was sent via -- how much material was this?

5          MR. WIRSHBA:  It was a lot of material --

6          THE COURT:  Well, how do you get it --

7          MR. WIRSHBA:  I apologize.

8          THE COURT:  -- on an email?  I can understand how you

9   get it on a thumb drive, but how do you get it on an email?

10          MR. WIRSHBA:  We didn't get it on an email, your

11  Honor.  We asked Ms.George to send us a hard drive.  We mailed

12  that hard drive back to her with the data on it, and we sent

13  her a confirmatory e-mail, saying, Ms. George, here's the

14  discovery letter we're sending you that accompanies the

15  material that we've just mailed to you.

16          THE COURT:  All right.  Now, Ms. George, what's the

17  answer to that?  I'm being told that you asked for the

18  discovery from the Hernandez Alvarado trial.  The government

19  asked you for a hard drive.  You supplied it.  And they gave

20  you the material on that hard drive and sent a confirmatory

21  email.  Is that correct?

22          MS. GEORGE:  They gave me discovery on a hard drive.

23  It's not complete.  And that's why I filed the motion as to

24  what I really wanted.

25          THE COURT:  Well, listen, I don't know.  I tried to

L4CASALCps

1    listen carefully.  And the --

2              MS. GEORGE:  It's just -- your Honor --

3              THE COURT:  Excuse me.  Don't interrupt me.  Maybe you

4    chose your words very carefully.  But I thought I heard from

5    you this morning that you have not been given anything from the

6    Hernandez Alvarado trial except the testimony of one witness.

7              MS. GEORGE:  No.  I also advised your Honor that I

8    received the exhibits that were marked into evidence.

9              THE COURT:  And the exhibits, correct.  And nothing

10   else.

11             MS. GEORGE:  That's correct.  And what I didn't --

12   what I didn't get was the list of what I supplied to them in my

13   January 25th letter, because that was in response to receiving

14   what they sent to me.

15             THE COURT:  No, no, no.  I'm not talking about that.

16   I'm talking about what you told me you got and didn't get.  And

17   what you told me you got, you got the exhibits.  You got the

18   testimony of one witness.  And that's it.  And now, I'm

19   hearing -- and we're going to get to the bottom of this.  And

20   if we need to have a prosecutor on the witness stand and a

21   defense counsel on the witness stand, we'll get to the bottom

22   of who's telling the truth.  The prosecutor is selling me that

23   the hard drive gave you the discovery from the Hernandez

24   Alvarado trial.  Is that not true?  Or do you have any reason

25   to doubt the truthfulness of that representation?

L4CASALCps

1          MS. GEORGE:  Your Honor, I received -- well, I hear --

2     there is discovery that I did not receive that they -- let

3     me -- I'll just give an example.  There was expert testimony at

4     the trial.  I never --

5          THE COURT:  I'm trying to find out whether the

6     government's statement on the record this morning was truthful

7     or not.

8          MS. GEORGE:  Well, I think it's partially truthful,

9     but I think it's not complete.  Just as --

10         THE COURT:  What is the part that's not complete?

11    What do you know of that was discovery in Hernandez Alvarado

12    that they didn't produce to you?

13         MS. GEORGE:  Well, I assume -- and Hernandez Alvarado,

14    as I stated, that when they did video recordings, there were --

15    there were -- there was discovery pertaining to those specific

16    video recordings.  There was discovery pertaining to experts,

17    the experts that they called.  There was discovery pertaining

18    to, they had a professor who testified.  I didn't get any of

19    that.

20         With respect to one of the witnesses -- and I

21    understand about the DEA-6 and the R-302s.  But I did not see,

22    you know, copies of documents pertaining to particular

23    witnesses.  So --

24         THE COURT:  Are you talking about Rule 16 discovery

25    from Hernandez Alvarez, or are you talking about 3500 material?

L4CASALCps

1          MS. GEORGE:  I think -- both.  And --

2          THE COURT:  OK.  So tell me what Rule 16 discovery you

3    think the government didn't give you from that case.

4          MS. GEORGE:  Well, I don't think I have anything with

5    respect to the video recordings.  I don't have documents

6    pertaining to the expert testimony, such as CVs or things of

7    that nature.  I, you know, and I'm just going through my list

8    here.  I don't have everything in front of me.  But it's what I

9    state basically in my motion.  And I don't have a problem to

10    sit down with them and go through everything again, but there

11    are some things that are miss -- that are just not here.

12          THE COURT:  Well, Ms. George, I'm having trouble with

13    the sweeping description of the government's failures

14    contrasted with the sweeping representations made by the

15    government.  And it gives me fear and concern that one side or

16    the other is overstating the position.  And that's what I'm

17    trying to get to the bottom of it, because it --

18          MS. GEORGE:  OK.

19          THE COURT:  -- it relates to credibility.

20          MS. GEORGE:  I appreciate --

21          THE COURT:  Yes.  Let me find out from Mr. Wirshba,

22    what is the situation with regard to the materials that were

23    referenced by Ms. George?

24          MR. WIRSHBA:  Your Honor, as you might imagine, the

25    materials that we produced, which is the Rule 16 discovery in

L4CASALCps

1    the Hernandez trial, are rather voluminous.  With respect to

2    the particular items that Ms. George is referencing, I would

3    need a little more time in order to be able to respond to those

4    particular things.  And of course the government is happy to

5    engage with Ms. George about that.  But, you know, we produced

6    to Ms. George the Rule 16 material, as I understand it, in that

7    Tony Hernandez trial.  And so to the extent that there is

8    additional material that Ms. George knows of or believes

9    exists, we would be happy to go back and see if those are in

10   the discovery that we've already produced, or whether they

11   might not be for some reason.  But it's my understanding that

12   the government produced everything that was Rule 16 in that

13   trial.

14           THE COURT:  All right.  I have a representation from

15   the government, and I have a claim from Ms. George that the

16   representation is not true.  So what we're going to do is --

17   are you doing anything this afternoon, Ms. George?

18           MS. GEORGE:  I am available by phone to -- as your

19   Honor knows, I'm not in the district.  I'm not in Southern

20   District.  I'm out of the district.  So I'm not here.  I'll be

21   back in the district on Thursday the 15th.

22           THE COURT:  You're available by phone this afternoon?

23           MS. GEORGE:  Sure.  I'm available any time, your

24   Honor.

25           THE COURT:  Mr. Wirshba, are you available this

L4CASALCps

1      afternoon?

2                  MR. WIRSHBA:  Of course, your Honor.  I have another

3      conference at, I believe, 2:30 this afternoon, but otherwise

4      can of course be available.

5                  THE COURT:  All right.  Would 3:30 be convenient for

6      you all?

7                  MS. GEORGE:  Yes.

8                  THE COURT:  All right.

9                  MR. WIRSHBA:  Of course, your Honor.

10                 THE COURT:  So why don't you get on the phone and see

11     whether you can sort this out, whether I have been lied to by

12     one or the other side here.  One side says they have produced

13     all Rule 16 discovery, bar none, from the Hernandez Alvarez

14     trial -- recognizing that when that kind of a representation is

15     made, there could be something that got overlooked or clipped

16     or what have you.  But substantially all.  And I have the other

17     side saying that's simply not true.  So I would like to know

18     who is exaggerating here, to begin with.  And if there are

19     issues you want to discuss and press, have your meeting, have

20     your discussion, and within two weeks from today I want to get

21     a letter setting forth any outstanding discovery issue, mindful

22     of the law of this circuit on bills of particulars and the

23     scope of Rule 16 discovery, and also the provisions of the

24     Jencks Act.

25                 So will that work for you, Ms. George?

L4CASALCps

1            MS. GEORGE:  Of course it will, your Honor.

2            THE COURT:  All right.

3            Mr. Feitel, let me hear from you.  Do you have any

4    motions in this case?

5            MR. FEITEL:  Good morning, your Honor.  I do not have

6    any motions pending with the Court.  And I can report to your

7    Honor that I also received a copy of the hard drive.  I

8    provided one to the government that was received by my office

9    on or about January 15th.  I thereafter sent a discovery letter

10   to the government.  We engaged in some emails.  And we actually

11   had a phone discussion about some aspect of moving forward

12   through this case.

13           Till this point I have not filed any motions with

14   respect to discovery.  What I received is what I believe

15   Ms. George received, which is the public testimony and the

16   admitted exhibits in the Tony Hernandez case.  And the

17   government provided that to me on the hard drive.

18           I know that your Honor just completed the trial of

19   Mr. Geovanny Fuentes.  I had occasion to listen to some of the

20   proceedings.  I was going to ask the government, now that that

21   case is over, to provide me with the public documentation from

22   that case as well to determine whether it has any application

23   to my client's case and whether I could glean any additional

24   information that might be useful in preparing a defense.

25           Given what's transpired with the government and

L4CASALCps

1    counsel for the co-defendant, I thought that I would also, you

2    know, take the opportunity to discuss with the government what

3    else might be available and see if we can have some resolution

4    if there are other additional materials that I need to get.

5    And I have explained to the government what else I might want

6    in my letter to them as well.

7              THE COURT:  All right.  And what has the government

8    done in response to your letter?

9              MR. FEITEL:  We had a phone call and the government

10   basically told me that they did not think that I was entitled

11   to anything more.

12             There are some things -- I'm, as well as Ms. George,

13   aware of the law on the bill of particulars and about the

14   difference between Rule 16 and 3500 material, but there are in

15   this case some issues that I think might call for the granting

16   of a bill of particulars, and without wanting to preargue or to

17   prejudge, my client is charged with a weapons possession

18   offense during a 15-year time frame, and that's also not solely

19   in one country but in three countries.  And I do think, with

20   respect to that charge, additional discovery would be warranted

21   to help me prepare a defense.  It's complicated to defend

22   against a charge that transpires over 15 years.  It's not --

23   there is a conspiracy, but there is also a possession charge

24   for weapons.  And it is somewhat complicated for an attorney to

25   prepare a defense given the lengthy period of time that's

L4CASALCps

1    alleged in the indictment.

2           And so your Honor knows, Ms. George and I intend to

3    try to vigorously investigate this case.  I did monitor the

4    proceedings in the Geovanny Fuentes case, and I know that

5    defense counsel in that case asked at the last minute for

6    additional time.  We do not plan to do that.  But we want to

7    know as much as we can before then so we can actually do an

8    investigation and not have to come back to the court at the

9    last instance and ask for more time.

10          THE COURT:  Well, I'm trying to get this case in a

11   position for a trial date.  That's what I'm trying to do.  And

12   I take it, Mr. Wirshba, that the government recognizes the

13   importance of pointing defense counsel in the direction of what

14   evidence there might be with regard to the weapons or, if the

15   government is unwilling or unable to do so, then this may be

16   the case where a bill of particulars is appropriate.  So are

17   you available tomorrow, Mr. Wirshba?

18          MR. WIRSHBA:  Your Honor, I am available whenever

19   would be helpful to the Court.  Of course.

20          THE COURT:  All right.  And Mr. Feitel, are you

21   available?

22          MR. FEITEL:  Yes, your Honor.  We had scheduled this

23   case originally for tomorrow at 1 p.m.

24          THE COURT:  All right.  So if you could get on the

25   phone with the government tomorrow at 1 o'clock and see whether

L4CASALCps

1    you can work this out and let me get a letter from you, again

2    within two weeks.  My real question is, is this a case that

3    should be put in for a trial date for the third quarter of

4    2021, or not?  That's the first question.  Let me hear from the

5    government.

6            MR. WIRSHBA:  Your Honor, the government is prepared

7    to try the case on whatever schedule the Court believes is best

8    and most expedient.

9            THE COURT:  All right.  And, Ms. George, what do you

10   think?

11           MS. GEORGE:  I do not think so, because, depending on

12   what I receive in my request for discovery in our discussions,

13   we need to do some investigations, which will require an

14   investigator traveling to Guatemala and Honduras for certain

15   documents that I believe to be important.  And depending on

16   travel issues with both countries, and COVID requirements,

17   etc., I'm not so sure that things are going to happen that

18   fast.

19           It's also been my experience in conducting

20   investigations in Honduras and in Guatemala that things just do

21   not appear overnight.  And that's why I'm very anxious to get

22   going on this and to push this along as fast as possible,

23   because I know it will take some time there.

24           THE COURT:  Well, but that presupposes that you have

25   not gotten the discovery you're entitled to.

L4CASALCps

```
 1          MS. GEORGE:  Well, it also -- well, for example, if I
 2     receive document A but I know that there's a document that may
 3     exist in Guatemala that counters document A on behalf of my
 4     client, then I need to go and retrieve that particular
 5     document.  And that's what I would like to do.  That's what I'm
 6     proposing to do.  There are also some other supporting
 7     documents that I have already been in the process of trying to
 8     get together.  So it's just, instead of punching in the dark
 9     here, I would like to know what I have and get going with this.
10     I have absolutely no intentions to delay anything.  I have
11     familiarity with investigations in both countries.  But I just
12     know, your Honor, that it does take time.
13          THE COURT:  All right.  Well, what you can do in your
14     letter which you're going to get me in two weeks is lay out
15     your argument as to when this case should be tried, I mean
16     which quarter of the year.  It's third quarter or fourth
17     quarter.  And if not either of those, please be specific.  If
18     you have any blackout dates in those quarters, let me know what
19     they are.
20          MS. GEORGE:  I will, your Honor.  Thank you very much.
21          THE COURT:  Yes.  Mr. Feitel, let me hear from you on
22     this case being ready for trial.
23          MR. FEITEL:  Thank you, your Honor.  In my experience,
24     it's -- I've viewed some, as I mentioned, prior proceedings
25     with your Honor.  I don't want to pick a date without having a
```

L4CASALCps

1   better perception of what I need to investigate.  And I don't

2   want to pick a date and then have to come back to the Court at

3   the last minute and say, oh, we're terribly sorry, we're not

4   ready.  I think that's not the kind of professionalism that

5   we're looking to demonstrate in this case.  So I want to talk

6   to Mr. Wirshba and consult with my client as well.  I'm going

7   to be in New York next week.  And within the two weeks that

8   your Honor set forth for our letter, I will also articulate

9   when I think this case will be ready for trial and why.

10          THE COURT:  All right.  And, again, we're talking

11   about, in the existing regime, my date for requesting for the

12   third quarter is May 15th, and my date for requesting for the

13   fourth quarter is, I believe, August 15th.  So that's the way

14   it works.  It's not a trial date at this stage of the game.

15   It's a trial quarter.  And then I'll know what dates are

16   available or what date, if any, is available during that

17   quarter.  So that's what we're dealing with at the moment.

18          So I'm going to ask my deputy to get me a date for us

19   to get together in six weeks.

20          THE CLERK:  OK.  So in six weeks, would be the week of

21   May 24th.

22          THE COURT:  Approximately.  Whatever works best, Flo.

23          THE CLERK:  OK.  And because there they're at MCC --

24   right?  Are they at MCC?

25          MS. GEORGE:  Yes, Flo, they're at MCC.

L4CASALCps

1          THE CLERK:  OK.  So it has to be a Monday, a
2     Wednesday, or a Friday.  A Friday.
3          Will it be in person or on the phone, Judge?
4          THE COURT:  I think for the next conference we can do
5     it by phone.
6          THE CLERK:  OK.
7          THE COURT:  Is that agreeable to the defendants?
8     Ms. George?
9          MS. GEORGE:  Yes, your Honor, for me.
10         THE COURT:  And Mr. Feitel?
11         MR. FEITEL:  Yes, your Honor, on behalf of my client.
12         THE COURT:  Thank you.
13         THE CLERK:  May 26th at 10:30.
14         THE COURT:  All right.  Does that work for the
15     government?
16         MR. WIRSHBA:  Yes, your Honor.
17         THE COURT:  Ms. George?
18         MS. GEORGE:  Yes, your Honor.
19         THE COURT:  Mr. Feitel?
20         MR. FEITEL:  Yes, your Honor.
21         THE COURT:  All right.  That will be the next time
22     we'll get together.  And I'll hear the government's
23     application.
24         MR. WIRSHBA:  Yes, your Honor.  The government would
25     seek to exclude time until that date, under the Speedy Trial

L4CASALCps

1    Act, to allow the parties to continue to engage in discussions

2    about a possible pretrial disposition, to allow the defense to

3    continue to review discovery and prepare the case for trial,

4    and in light of the COVID-19 pandemic.

5              THE COURT:  Ms. George?

6              MS. GEORGE:  So agreed, your Honor.

7              And I do have one other request before we leave.

8              THE COURT:  All right.  That's fine.

9              Mr. Feitel?

10             MR. WIRSHBA:  I agree, your Honor.

11             MR. FEITEL:  I agree, your Honor.  I spoke to

12   Mr. Salguero before this court hearing commenced, and he agrees

13   to the tolling of the statute of limitations between now and

14   the next return of court date.

15             THE COURT:  This would be the exclusion of time under

16   the Speedy Trial Act.

17             MR. FEITEL:  Yes, sir.

18             THE COURT:  All right.  I find that the ends of

19   justice will be served by granting a continuance until May 26th

20   and that the need for a continuance outweighs the best

21   interests of the public and the defendant in a speedy trial.

22   The reasons for my finding are that the time is needed to

23   enable the government and defense counsel to have discussions

24   regarding any additional discovery, for the parties to report

25   back to the Court, and for the parties to engage in trial

L4CASALCps

1    preparation.  And accordingly the time between today and May

2    26th is excluded under the Speedy Trial Act.

3            Ms. George, you had something else you wanted to

4    raise.

5            MS. GEORGE:  Yes, your Honor.  I would ask if the

6    Court could provide an order requesting some medical attention

7    for my client, who's had some either a back injury or he's not

8    been able to move correctly.  He's been asking, putting through

9    requests for medical attention and it has not been -- he's not

10   been attended to.  I would ask if the Court, if I send in a

11   letter, perhaps the Court can so order it and I can forward it

12   over to MCC?

13           THE COURT:  Ms. George, what I would like you to do is

14   get in touch with staff counsel in the MCC and discuss it with

15   staff counsel.  If you do not get a satisfactory resolution in

16   discussing with staff counsel, you can write me a letter,

17   copied to the government, reporting on your interaction with

18   staff counsel in the warden's office.

19           MS. GEORGE:  Will do so.  Thank you, your Honor.

20           THE COURT:  Thank you.

21           Mr. Feitel, anything else?

22           MR. FEITEL:  Not at this time, your Honor.  Thank you

23   very much.

24           THE COURT:  All right.  Mr. Wirshba?

25           MR. WIRSHBA:  Nothing further from the government,

L4CASALCps

1    your Honor.

2              THE COURT:  All right.  Well, thank you all very much.

3    I appreciate your participation this morning.  We're adjourned.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25