

**Emma M. Greenwood, Esq.**

June 14, 2023

**VIA ECF**
Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *U.S. v. Victor Hugo Diaz-Morales*, et al., 15 Cr 379 (PKC)
            Status Report of the Coordinating Discovery Attorney (CDA)

Dear Judge Castel:

As the court-appointed Coordinating Discovery Attorney (CDA) on this matter, I respectfully submit this Report, which includes redacted portions, to update the Court on the status of global discovery, my general status fulfilling the obligations set forth in the Order appointing me, and specific challenges and delays that we have experienced while working diligently with the global discovery.

Your Honor's Order appointing me (Document #547, dated April 12, 2023) directs that I am to submit *ex parte* status reports to the Court, as the nature of my CDA work includes references to and products of discussions I have had with defense counsel regarding their strategy for and methods of discovery review.  An unredacted version of this submission, which has been shared with defense counsel, will be filed to Your Honor contemporaneously, with a request to be filed *Ex Parte* and Under Seal.  I have discussed at length the status and, specifically, this Report with defense counsel.  We have agreed that it is prudent and in the interest of the defendants to transparently provide the Government, via this ECF submission, the portions of this Report that do not include defense work product and/or reveal communications that I have had with defense counsel.

In short, while my team and I have made some progress, issues remain that have impeded my ability to fulfill my obligations as outlined in the CDA Appointment Order dated April 12, 2023.  These issues, which I have discussed with defense counsel and the Government and detail further below, include:

1. No Government cover letter or set of cover letters addressed to my office for the "Production 4.27.23," which includes the voluminous set of multiple global disclosures produced in this matter prior to my appointment;
2. No direction from the Government re a malware-flagged file we found in Production 4.27.23;
3. Delayed and limited responses to 30 issues identified across the two (2) global discovery disclosures received by my office to date; [1]
4. A pattern of delayed response from the Government to correspondence re the aforementioned, causing us significant delays.

---

[1] The Government provided on June 13, 2023, the evening before this submission, a response to my office on these issues.  Upon our review, more follow-up is required; only one issue can be marked resolved.  We have arranged a June 16, 2023 meeting with the Government to discuss these issues and attempt to resolve more of them.



First, by way of introduction, and in the event the Court is unfamiliar, the CDA program is managed by the Administrative Office of the U.S. Courts (AO), Defender Services Office (DSO), which provides litigation support services as a part of a national strategy approved by the Judicial Conference Committee on Defender Services.  See Guide to Judiciary Policy Vol. 7: Defender Services §§ 320.70.10, 320.70.40 (noting that [p]roviding an adequate defense may require CJA panel attorneys to utilize computer hardware, software, or litigation support services not typically available in a law office). Through this national litigation support strategy, CDAs provide organizational tools and strategies for defense counsel on cases for which there are many defendants, voluminous discovery, and/or complicated electronic discovery issues.  In my CDA capacity, I recommend cost effective methods to avoid unnecessary duplicative organizational work by each defense team, integrating the use of technology to assist in the management of global discovery produced in federal criminal prosecutions.  I have been a CDA since the inception of the program in 2011.

CDA efforts are intended to help reduce the time and money expended by court-appointed counsel to organize and store voluminous discovery in complex matters like this one, and to provide defense counsel with tools to assist their review of the same.  *We also address technical issues and general discrepancies with the global discovery (e.g. confirming that all discovery that was intended to be produced was indeed produced).*

Upon my appointment, as the point person between the Government and the defense team on global discovery matters, I receive directly from the Government one copy of each global discovery production and disseminate the same to all defense teams.   My staff and I then organize the discovery and develop tools on an ongoing basis for court-appointed counsel that help them more quickly locate discovery, saving them time and containing costs.  The tools are built on a global level rather than on an individual level.  Ultimately, the attorneys of record remain responsible for the results of their review process.

As Your Honor is aware, this case had progressed for some time prior to my appointment, and a substantial volume of global discovery had been disclosed to defense counsel, in multiple productions. We anticipated and prepared for a significant amount of work upfront.

Upon my appointment on April 12, 2023, I reached out to the Government to schedule a Rule 16.1 Meet and Confer to discuss the anticipated timeline, volume, and format of production of global discovery and to coordinate the U.S. Attorney's Office's receipt of hardware to provide a copy of the same to my office.  On April 18, 2023, I followed up on my April 13, 2023 email to the Government regarding scheduling the meet and confer.  After several email exchanges, the Meet and Confer took place on April 24, 2023.  My office sent one 4 terabyte (TB) hard drive to the Government that same day.

Per my standard practice, I also reached out to all defense counsel to discuss the nature of my appointment and to collect information from them of their needs.

Since my appointment, my office has received two (2) global discovery disclosures: Production 4.27.23 (which appears to be a large collection of global disclosures produced prior to my appointment) and Production 5.30.23, each of which is discussed in further detail below. ████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████





Production 4.27.23, which I understand to be a consolidation of eight (8) productions produced prior to my appointment, was disclosed by the Government to my office on April 27, 2023 and received by my office on April 28, 2023. Given the extensive issues my team has identified (discussed further below), we have not completed for defense counsel a processed version of this material.[2] We have on multiple occasions repeated our offer to defense counsel to make a mirror image of the copy I received from the Government, in the event any team needs a copy of these original materials in whole or in part.

The drive containing Production 4.27.23 was encrypted in a program called McAfee, which requires a password. The Government did not initially provide us with a password. Once we retrieved the password from the Government, and as part of my office's standard practice, a decrypted backup copy of the drive was made and the discovery was run through two (2) antivirus programs, which flagged one (1) file as malware. We immediately alerted both defense counsel and the Government to this issue.

It should be noted that McAfee is notorious for failing to fully extract files, especially on drives that include data of this volume; it is not a best practice to encrypt this volume of material using McAfee. Nevertheless, we completed the extraction so that we could work with the files.

On May 1, 2023, once our extraction process was complete, my office contacted the Government to confirm the properties (volume, file count, and folder count) of the drive, requested a cover letter addressed to my office noting the production of this consolidated drive, and inquired about how we

---

[2] 



should proceed with the file our software flagged as malware.[3] [4] My staff followed up on these multiple times, as no response had been provided. I followed up again personally on May 12, 2023 and informed the Government that, in the absence of direction from the U.S. Attorney's Office, we would remove the malware-flagged file from our copy and from copies being sent to defense counsel due to security concerns, unless and until we received other direction. AUSA Jacob Gutwillig informed me later on May 12, 2023 that his office was in the process of recreating the drive they initially sent my office so that they could confirm the properties and provide my office with a cover letter. We only received confirmation of properties from the Government on June 3, 2023.

<u>The Government has provided no direction to date on the malware-flagged file.</u>  My staff and I alerted defense counsel to this file, as it is our understanding that they had previously received this material directly from the Government, which is another concern. We removed the malware-flagged file from our copy of the discovery collection to avoid potential contamination with our server and other equipment. As of the date of this report, a cover letter addressed to my office has not been received for this material, nor has the Government provided direction to us regarding next steps they will take per the malware-flagged file.

Once virus scans were complete and the compromised file was removed from our set of materials, we completed a standard intake process to determine the types of files received and their volumes. Within each production folder, we found a cover letter for that production that was addressed to one specific defense attorney. We used each of those letters as a starting point to review the materials on the drive. During review, we identified instances of:

- Bates errors (missing and duplicative)
- Blank files
- Cover letter errors
- Empty folders[5]
- Inaccessible files
- Missing passwords

In total, we identified 60 issues within this disclosure. We provided a spreadsheet that outlined these issues to the Government on May 18, 2023. After our repeated follow up, the Government responded to our inquiries on June 1, 2023 and June 2, 2023, respectively. As noted, the Government also sent responses to our inquiries on June 13, 2023, which we continue to review and will require follow-up. As of today, twenty-five (25) issues *for this production* remain outstanding.

---

[3] Confirmation of properties ensures that all files intended for production were copied to the drive received by my office and that everything was extracted correctly from the McAfee program. It should be noted that, due to the limited utility of the McAfee program, only the party that encrypted the materials in McAfee (here, the Government) has the ability to confirm properties.

[4] My office is not in the practice of altering any Government production. If files need to be removed, we rely on the Government to provide me with that direction.

[5] Notably, for inaccessible files and empty files/folders, the Government confirmed in their June 13, 2023 response that several omissions in the global discovery that we identified were *not* intentional. Supplemental discovery is now anticipated.



███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

We continue to update defense counsel on the status of our processed version of Production 4.27.23.

My office was notified about Production 5.30.23, a new global production, on May 30, 2023. We received this material from the Government on May 31, 2023. We again completed our standard intake and review process after the virus scans confirmed there were no potential threats present. During review of the Government's cover letter, we identified five (5) issues relating to cover letter errors and overlapping Bates numbers. The total number of outstanding issues for all global discovery is now 30. My office provided the updated list to the Government and also requested that they confirm the properties of this production on May 31, 2023. After responses were received, the list was updated and again provided to the Government on June 5, 2023. Notably, the responses received from the Government did not address any of the issues revealed in this most recent production. A copy of the updated issues list that we provided to the Government is attached as Exhibit B. We redacted Exhibit B so as not to reveal specifics of the discovery in this filing, as some are covered by the Protective Order.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████

**As of the date of this report, the following inquiries to the Government remain outstanding:**
1. A cover letter addressed to my office for Production 4.27.23;
2. Direction regarding the malware file identified in Production 4.27.23; and
3. Responses to the remaining 30 issues identified across the two (2) productions.

My staff and I have had numerous conversations with defense counsel and continue to update them on the status of the above-mentioned issues. Defense counsel have expressed their frustrations with the



Government's stalled responses to our inquiries, which have delayed our work.  On June 1, 2023, I expressed to the Government a request and my availability for a follow-up meet-and-confer to discuss the remaining issues, especially since many have been pending for some time.  In short, no meeting has occurred since then, despite my availability and my expressions of urgency.  At the time of this Report, and to accommodate their earliest availability despite my request to confer sooner, we have a meeting with the Government scheduled Friday June 16, 2023.



My staff and I have maintained frequent communication with defense counsel. We remain available to assist them with their global discovery needs and inquiries, as needed.

Respectfully submitted,

Emma M. Greenwood
Coordinating Discovery Attorney (CDA)

Cc: All Defense Counsel (via Email and ECF)
    AUSA Elinor Tarlow (via ECF)
    AUSA Jacob Gutwillig (via ECF)
    AUSA David Robles (via ECF)
    AUSA Kyle Wirshba (via ECF)

Enclosures (2 – ECF versions Redacted)

# EXHIBIT A

*U.S. v. Victor Hugo Diaz-Morales*, et al.
**1:15-cr-00379-PKC**
**Global Discovery as of 6/14/23**





**CDA WORK PRODUCT**

*U.S. v. Victor Hugo Diaz-Morales*, et al.
**1:15-cr-00379-PKC**
**Global Discovery as of 6/14/23**





*U.S. v. Victor Hugo Diaz-Morales*, et al.
**1:15-cr-00379-PKC**
**Global Discovery as of 6/14/23**





# EXHIBIT B

*U.S. v. Diaz-Morales,* et al.
15-cr-00379 (PKC)
Outstanding Global Discovery Issues as of June 14, 2023

1



*U.S. v. Diaz-Morales,* et al.
15-cr-00379 (PKC)
Outstanding Global Discovery Issues as of June 14, 2023

2



*U.S. v. Diaz-Morales,* et al.
15-cr-00379 (PKC)
Outstanding Global Discovery Issues as of June 14, 2023

3

