UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,                              15 Cr. 379 (PKC)

        - against -


MAURICIO HERNANDEZ PINEDA,


            Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x



**DEFENDANT MAURICIO HERNANDEZ PINEDA'S MEMORANDUM OF LAW
IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE***

RICHARD J. MA, ESQ.
20 Vesey Street, Suite 400
New York, New York 10007
Ph: 212-431-6938
**richardma@maparklaw.com**

KEN WOMBLE, ESQ.
20 Vesey Street, Suite 400
New York, New York 10007
Ph: 718-514-9100
**womble@zemanwomblelaw.com**

CORY GARCIA, ESQ.
245 Main Street, Suite 420
White Plains, New York 10601
Ph: 914-705-3745
corygarcia911@gmail.com

*Attorneys for Mauricio Hernandez Pineda*

## PRELIMINARY STATEMENT

This memorandum is submitted in opposition to the government's motions *in limine*, seeking: (1) the admission of various "other act" evidence, including "uncharged bad acts" pursuant to Federal Rule of Evidence 404(b); (2) the admission of electronic communications by alleged co-conspirators; and (3) the admission of electronic evidence from two cellphones seized from an alleged co-conspirator.

We respectfully request leave to supplement our response to the government's motions *in limine* following the government's full production of 3500 materials.

## I.   The Court Should Deny the Government from Introducing "Other Acts" Evidence

The government seeks to introduce evidence of the following alleged prior bad acts: (i) that Mr. Hernandez Pineda was bribed to abuse his position as a police officer to provide security for drug shipments, ensure that drug shipments evaded security, provide information on law enforcement operations and quash a law enforcement investigation; (ii) that Mr. Hernandez Pineda bribed other law enforcement officials to safeguard drug-trafficking activities; and (iii) that Mr. Hernandez Pineda provided security for an alleged $1 million bribe by El Chapo to Tony Hernandez.   For the following reasons, this Court should deny the government from introducing such evidence.

### A.  Applicable Law

In conspiracy cases, "the government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy."  *United States v. Bagaric*, 706

F.2d 42, 64 (2d Cir. 1983).  Accordingly, the uncharged criminal activity does not fall within the purview of Federal Rule 404(b), "if it arose out of the same transaction or series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).  Where "it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *United States v. Townsend,* 2007 U.S. Dist. LEXIS 32639, 2007 WL 1288597, at *1 (S.D.N.Y. May 1, 2007) *aff'd United States v. Mercado*, 573 F.3d 138 (2d Cir. 2009).

Where uncharged criminal activity does not satisfy the standard described in *Carboni*, to be admissible it must meet the requirements under Rule 404(b), which provides that: "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  In *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988), the Supreme Court discussed the four prerequisites for admitting other "bad act" evidence must: (i) be offered for a proper purpose as defined in Rule 404(b); (ii) be relevant; (iii) its probative value must outweigh its prejudicial effect under Rule 403; and (iv) the trial court must, upon request, instruct the jury to consider the evidence only for its limited purpose.  *See also, United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988).

While taking an "inclusionary approach" to 404(b) evidence (*see United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990), the Second Circuit has nevertheless repeatedly warned trial courts that, in determining the admissibility of prior bad acts, "caution and judgment are called for." *United States v. Mohel*, 604 F.2d 748, 751 (2d Cir. 1979); *United States v. O'Connor*,

580 F.2d 38, 43 (2d Cir. 1970); *see also, United States v. Colon,* 880 F.2d 650, 656 (2d Cir. 1989). Additionally, this "inclusionary" approach "does not invite the government to offer, carte blanche, any prior act of the defendant in the same category of crime." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (holding that evidence of prior convictions was "propensity evidence in sheep's clothing"); *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004). Of critical importance, "uncharged" crimes evidence cannot be introduced to show a defendant's criminal propensity. *See Huddleston*, 485 U.S. 681 (1988); *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012).

Should a court find that the first two prongs of *Huddleston* are satisfied, the court must then decide whether the probative value of the "uncharged bad act" evidence is substantially outweighed by the danger of unfair prejudice. As the Supreme Court set forth in *Old Chief v. United States*, 519 U.S. 172 (1997), "unfair prejudice" is an "undue tendency to suggest decision on an improper basis," and invoked as an example a jury's "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." 519 U.S. at 180-81. The Second Circuit has instructed that the probative-prejudice balancing analysis demands "particularly searching, conscientious scrutiny" in the context of prior crimes evidence because such evidence poses a severe risk of unfair prejudice. *McCollum*, 584 F.3d at 476. Indeed, when conducting this balancing, the trial court must remain attentive to the potential for "undermin[ing] the fairness of the trial" with "classic, and powerful, evidence of propensity." *Id.* at 477.

In this case, evidence of "uncharged bad acts" merits "particularly searching, conscien-

tious scrutiny." Such evidence easily lends itself to generalized reasoning about a defendant's criminal propensity and undermines his presumption of innocence. Despite the most careful instructions from the court, jurors are likely to believe that because of such "uncharged bad act" evidence there is a high probability that the defendant is guilty of the offenses for which he is on trial. *See* 1A Wigmore, Evidence § 58.2 (Tillers rev. 1983) (stating that, where prior crimes evidence is adduced, "[t]he natural and inevitable tendency of the tribunal…is to give excessive weight to the vicious record of crime thus exhibited and either allow it to bear too strongly on the present charge or to take the proof of it as justifying a condemnation, irrespective of the accused's guilt of the present charge").

Accordingly, "uncharged bad acts" should not be admitted unless a trial court has carefully conducted the Rule 403 balancing test required by *Huddleston*. *See, e.g., United States v. Salameh*, 152 F.3d 88, 110 (2d Cir. 1988) ("To avoid acting arbitrarily, the district court must make a 'conscientious assessment' of whether unfair prejudice substantially outweighs probative value." (quoting *United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1982); *United States v. Williams*, 596 F.2d 44, 51 (2d Cir. 1979) ("District judges must carefully scrutinize both the basis for the claimed relevance of [prior crimes] evidence and the balance between its probative value and prejudicial effect. The key to a fair trial in such cases is careful determination by the trial judge of both issues, particularly the latter.").

As is true for all evidence, uncharged criminal activity, to be properly admitted, must satisfy Federal Rule of Evidence 403. Rule 403 excludes otherwise relevant evidence if "the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presenta-

tion of cumulative evidence."  Fed. R. Evid. 403.  The district court has broad discretion in considering the exclusion of prior bad act evidence pursuant to this rule.  *See United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992).

In the context of this rule, "[t]he term 'unfair prejudice' as to a criminal defendant speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged."  *Old Chief v. United States*, 519 U.S. 172, 180 (1997).  In other words, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one."  *Id.* (citing Advisory Committee Notes on Fed. R. Evid. 403, 28 U.S.C. App. p. 860).

It is axiomatic that propensity – or "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged" – constitutes one such improper basis for admission.  *Old Chief*, 519 U.S. at 180; *see also* Fed. R. Evid. 404(b) (prohibiting the admission of evidence of "other crimes, wrongs or acts to prove the character of a person in order to show action in conformity therewith").  Further, the risk that evidence will be so misused is at its highest when the prior bad act is the same, or very similar, to the bad acts alleged against the defendant in the current indictment.  *See, e.g., United States v. Gotti,* 399 F.Supp.2d 417 (S.D.N.Y. 2005) (excluding evidence of uncharged, 20 year-old murder when defendant on trial for double homicide and two attempted murders).

Further, any probative value of such evidence is diminished by the existence of other, less prejudicial means of proving the same point.   In *Old Chief*, the Supreme Court specified that once the district court had determined that some evidence of a prior bad act raised the danger of unfair prejudice, the court should then "evaluate the degrees of probative value and unfair preju-

dice not only for the item in question but for any actually available substances as well [because] a judge applying 403 could reasonably apply some discount to the probative value of an item when faced with less risky alternative proof going to the same point."  *Id.* at 182-83; *accord United States v. Gotti*, 399 F.Supp.2d 417, 419 (S.D.N.Y. 2005) ("probative value of [prior bad act] evidence is undercut by the availability of other, less prejudicial evidence that makes the same point"); *United States v. Nachamie*, 101 F.Supp.2d 134, 142 (S.D.N.Y. 2000).

As set forth below, none of the government's proffered evidence of prior uncharged crimes and bad acts satisfy the first two prongs of the *Huddleston* analysis; they are not offered for any proper purpose delineated in Rule 404(b)(2), and they are not relevant.  Alternatively, even assuming *arguendo* that the proffered evidence satisfies the first two *Huddleston* prongs, the probative value of said evidence in each instance is substantially outweighed by prejudicial effect.

### B.   The Government's Proffered Evidence of Political Corruption is Inadmissible as Direct Evidence.

The government argues that evidence that Mr. Hernandez Pineda paid and received political bribes is direct evidence of his participation in the alleged narcotics conspiracy because such conduct is inextricably intertwined with the charged crimes and completes the story of the crimes.  Alternatively, the government argues that such evidence is also admissible as probative of motive and intent under Rule 404(b).  For the following reasons, these arguments should be rejected.   This highly prejudicial and unreliable evidence is only offered to denigrate the defendant and distract the jury by showing bad character and criminal proclivity.

Contrary to the government's assertion, evidence of political corruption is not direct

proof of the charged narcotics conspiracy.   Nor is the evidence necessary to establish "mutual trust."   These proffered purposes are just pretenses to admit highly prejudicial evidence which will cause the jury to speculate that the defendants acted in accordance with bad character and criminal propensity.   The issue to be resolved at trial is straightforward: has the government proved beyond a reasonable doubt that Mr. Hernandez Pineda participated in a conspiracy to traffic narcotics and import them to the United States, and has the government proved beyond a reasonable doubt that Mr. Hernandez Pineda possessed a firearm in the course of said trafficking. To that end, whether the Honduran government is corrupt and whether Mr. Hernandez Pineda received or paid political bribes are irrelevant.   Whether Mr. Hernandez-Pineda participated in political corruption is not "out of the same transaction or series of transactions as the charged offense," is not "inextricably intertwined with the evidence regarding the charged offense," and "is not necessary to complete the story of the crime on trial."   *See United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).

Certainly, evidence of prior bad acts may be used to provide background information and to assist a jury in understanding relationships of mutual trust.   *See United States v. Pipola*, 83 F. 3d 556 (2d Cir. 1996).   However, such prior bad acts must be relevant to and address an aspect of the background or relationships that are at issue.   *United States v. Mercado*, 573 F.3d 138, 144 (2d Cir. 2009) (Droney, D.J., dissenting).   Here, the proffered prior bad acts evidence do not address any disputed aspect of the relationships underlying the alleged conspiracy.   Importantly, the government's cooperator testimony, if accepted, would suffice to convict on the charged crimes without the terribly prejudicial evidence of political bribes.   The government does not need evidence of political corruption to prove the charged crimes.   As such, the evidence is not admissi-

ble as direct evidence for the purpose of providing background information and must be subject to Rule 404(b) analysis.

This evidence is "other crimes/acts" evidence.  If it is admissible, it can only be so, if at all, pursuant to Rule 404(b), and must be analyzed under the prongs in *Huddleston* and, in particular, the 403 balancing test.

### C.  The Government's Proffered Evidence of Political Corruption is Inadmissible Under Rule 404(b).

In the alternative, the government offers evidence of political corruption pursuant to Rule 404(b) as probative of motive and intent.  The Court should not be persuaded.  The government seeks to overwhelm the jury with collateral evidence of bad character to unduly and inappropriately influence the jury.  This evidence has minimal probative value of the charged crime.  On the other side of the scale, the danger of unfair prejudice is high.  Prejudice stemming from the admission of evidence of high-level government corruption would substantially outweigh its minimal probative value.  Accordingly, such evidence should be excluded.

There are no legally relevant or material issues for which reference to the uncharged political corruption is probative.  To be admissible, evidence of prior bad acts must be relevant to an issue in dispute at trial.  *United States v. Scott*, 677 F.3d 72, 81 (2d Cir. 2012).  Motive and intent — the purposes proffered by the government — are not issues in dispute that are addressed by any of the political corruption evidence.  Indeed, the government cannot identify any disputed issue to which any aspect of the evidence of political corruption is relevant.  Even so, the proffered evidence is only probative as to whether Mr. Hernandez Pineda paid or received inappropriate bribes, but has no probative value to whether he participated in the alleged conspiracy by

providing information or security for narcotics trafficking activities.   Thus, the prosecution's proffered uncharged crime evidence is not relevant to any material issue and the only real effect of introducing the evidence is to draw the impermissible inferences of bad character and criminal proclivity.

### D.   The Government's Proffered Evidence of Political Corruption Must be Excluded Pursuant to Rule 403.

Even assuming *arguendo* that the proffered evidence is probative of a relevant issue, the potential for prejudice far outweighs any probative value.   Such evidence — which, upon information and belief will include incendiary testimony of exorbitant sums of money changing hands amongst unscrupulous government officials and notorious drug traffickers whilst the rest of the nation suffers in poverty — is highly prejudicial and would induce a jury to convict on collateral matters such as the defendant's other alleged bad acts, rather than actual evidence of guilt adduced by the government.   The jury will perceive a criminal propensity.   Moreover, the jury would likely convict to impose punishment for the uncharged acts.   As such, the Court must exclude evidence of political corruption.

In the instant matter, the cumulative effect of the proffered evidence from multiple witnesses, documents and other forms of evidence would overwhelm the evidence of the charged crime.   The jury would overestimate the significance of the evidence of uncharged crimes.   At the very least, the jury would face confusion over facts and charged crimes.   Moreover, the potential for prejudice will be exacerbated by the repeated presentation of bad act evidence through multiple witnesses.   No degree of care or precautionary instruction would minimize the immense

prejudice of such evidence.

The primary duty of the jury in this case will be to determine whether the evidence describing the acts charged is credible.  The allegations concerning uncharged crimes do not in any way render the central testimony pertaining to the charged crime more persuasive.  The danger of unfair prejudice resulting from uncharged crime evidence is clear and the case law shows that this Court can and should avoid the danger of prejudice by precluding the evidence so that the jury will not be distracted from its sole purpose: to determine guilt or innocence of unlawful prescription distribution based solely on the facts appropriate for that determination.


II.     **The Electronic Communications and Statements of Uncharged Individuals are Presumptively Inadmissible Hearsay Not Subject to Any Exceptions**

Under Federal Rule of Evidence 801(d)(2)(E), "[t]o admit a statement under the cocon-spirator exception to the hearsay definition, a district court must find two factors by a preponder-ance of the evidence: first, that a conspiracy existed that *included the defendant* and the declar-ant; and second, that the statement was made *during* the course of and *in furtherance* of that con-spiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) (emphasis).

Although the Rule 801(d)(2)(E) exception has exacting requirements for each alleged co-conspirator statement, the government seeks to introduce broad categories of communications. *See United States v. Coplan*, 703 F.3d 46, 82 (2d Cir. 2012) (the district court must "examine the hearsay statements sought to be admitted" in "making a preliminary factual determination" as to each statement's admissibility under Rule 801(d)(2)(E)) (quoting *Bourjaily v. United States*, 483 U.S. 171, 181 (1987)).

The government argues that it should be permitted to admit text message communications by alleged unidentified Central American drug traffickers purportedly regarding cocaine bearing a "TH" stamp, as well as planning, committing and being paid for their respective participation in the drug trafficking conspiracy.  Yet, without knowing *by whom* the statements were made, the Court simply has no basis for evaluating the admissibility of the unspecified statements that the government seeks to admit.  *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule.  There must be evidence that there was a conspiracy involving the declarant and the non-offering party, and that the statement was made 'during the course and in furtherance of the conspiracy.").

As the Rule implicitly acknowledges, not all statements made by alleged co-conspirators are "in furtherance" of the conspiracy, as required under 801(d)(2)(E).  The government's request to admit text message communications between two unidentified "Central American drug traffickers" is one such example.  Although the government asserts that the electronic communications between two uncharged individuals they refer to as "Central American drug traffickers" on June 23, 2016, reflects a discussion between two purchasers of cocaine who may have been part of the same distribution chain of the charged conspiracy, without knowing who the authors of the text messages themselves it remains impossible to decipher the true meaning of the messages and whether, by a preponderance of the evidence, they are in furtherance of the charged conspiracy in the instant case. Without knowing by whom theses text messages were made, these electronic communications simply reflect an out-of-context conversation between two unknown individu-

als—directly contrary to the requirement that the statements be "in furtherance of the conspiracy" to warrant admission.

The government has not proffered evidence that the uncharged individuals or "Central American drug traffickers" in the communications were in fact co-conspirators. While the government seeks to admit the text message conversations, the government neither identifies the individuals nor proffers any information of their participation in the alleged conspiracy. Nothing demonstrates by a preponderance of the evidence that these two individuals knowingly joined the alleged conspiracy as required for admissibility under Rule 801(d)(2)(E). The proffered communications alone are insufficient. *See Gigante*, 166 F.3d at 82.

Nor can these statements be admitted under Rule 804(b)(3) with a general assertion that they are "statements against penal interest," or otherwise admissible for a non-hearsay purpose. Without more specificity regarding the four-hour text message communications, it is impossible to decipher which of these exceptions the government contends applies to which statement. *United States v. Carneglia*, 256 F.R.D. 384, 392 (E.D.N.Y. 2009).

Additionally, to satisfy Rule 804 (b)(3), the proponent of the evidence bears the burden of showing the declarant is unavailable. *Enashar v. Speedway SuperAmerica*, LLC, 484 F.3rd 1046 (8th Circuit) (where plaintiff served one subpoena returned undeliverable and made no other efforts apart from motion to compel the FBI to disclose the agent's location, agent was not unavailable as required by Rule 804(b)(3)). The Rule is not that the government must do everything it can to get a witness to testify, only that it make reasonable, good faith effort to get the witness into court. *Ohio v. Roberts,* 448 U.S. 56. Here, the government's blanket statements in-

dicating they have charged one of the participants and is seeking to effect his arrest in order to pursue extradition, and the government's Fifth Amendment invocation speculation, fails to satisfy the reasonable good faith effort requirement of Rule 804 (b)(3).

Thus, the government's motions *in limine* to include the text messages among two unknown Central American drug traffickers should be denied.

**III.    Electronic Evidence from Tony Hernandez's Cellphones Should be Excluded Because It Is Overwhelmingly Prejudicial and Cumulative**

In October 2019, co-defendant Tony Hernandez was tried and convicted before this Court.  At that trial, the government introduced electronic evidence seized from Tony Hernandez's cellphones.  Admitted electronic evidence seized from Tony Hernandez's phones included: photographs of firearms, including automatic weapons; a machine gun inscribed with "Juan Orlando Hernandez, Presidente De La Republica Honduras"; United States currency which the Government asserts is consistent with drug proceeds; contact information for co-conspirators; and photographs of co-conspirators.

It should be emphasized that while the government may contend that the electronic evidence in Tony Hernandez's cellphone is probative of the charged crimes and is, therefore, admissible, it is unclear how the pictures on Tony Hernandez's cellphone are even related to, much less probative of, the charges in this case.  Without knowing who took the photos or when the photos were taken, it remains impossible to decipher the true meaning of the photos and whether they are even a part of the charged conspiracy in this case.

The electronic evidence from Tony Hernandez's cellphones should be excluded because it is overwhelmingly prejudicial, cumulative and only minimally probative.  In weighing the admissibility of potentially inflammatory evidence against a defendant, a trial judge is required to consider the risk of unfair prejudice and to balance that risk against probative value.  *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).  Clearly, all material evidence introduced against a defendant tends to prove guilt, however evidence becomes unduly prejudicial when it has an adverse effect upon a defendant beyond proving the fact that justified its admission.  Prejudice is created when the evidence proves an adverse fact that is not actually at issue, or, as in this case, it "unfairly excite[s] emotions against the defendant," arouses the jurors' sense of horror, or provokes an instinct to punish.  *Figueroa*, 618 F.2d at 943; *see also* Weinstein's Federal Evidence § 403.04 [1].

The district court must "conscientiously balance" the proffered evidence's probative value with the risk for prejudice, otherwise its conclusion may be disturbed upon appeal as arbitrary.  *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).  "To avoid acting arbitrarily, the district court must make a "conscientious assessment" of whether unfair prejudice substantially outweighs probative value." *United States v. Salameh*, 152 F.3d 88, 110 (2d Cir.1998) (per curiam) (quoting *United States v. Birney*, 686 F.2d 102, 106 (2d Cir.1982)).

Furthermore, the electronic evidence from Tony Hernandez's cellphones is superfluous to the government's case, and its admission would violate F.R.E. Rule 403, which bars the "needless presentation of cumulative evidence."  In *United States v. McCallum*, the Second Circuit pointed out that "the availability of other, less prejudicial, evidence on the same point ordinarily reduces the probative value of a given item of extrinsic evidence . . . If the incremental value is

slight, and the possibility of prejudice through misuse by the jury great, the court should exclude the evidence under Rule 403." 584 F.3d 471, 477 (2d Cir. 2011).

Here, the government argues that its purpose in admitting the electronic evidence is to show that Mr. Hernandez Pineda and alleged his co-conspirators used and carried firearms-such as those depicted in the pictures-during and in furtherance of the narcotics trafficking.  However, everything the government is seeking to introduce through the inflammatory pictures can be elicited through cooperator testimony and the pictures do not offer any new information.

The electronic evidence should also be prohibited pursuant to F.R.E. Rule 403, that bars evidence when there is a danger that it will confuse the issues or mislead the jury.  In this case, there is a substantial risk that the jury will improperly equate the evidence recovered from Tony Hernandez's cellphones with the actual crimes Mr. Hernandez Pineda is charged with, and see no distinction at all between the photographs seized from Tony Hernandez's cellphones and the alleged role Mr. Hernandez Pineda played in the charged conspiracy.  Obviously, the photos are not actual evidence that Mr. Hernandez Pineda has committed or participated in the charged conspiracy.

In conclusion, the pictures are a blatant attempt to invoke the jury's most negative reactions and prejudices against Mr. Hernandez Pineda and for the government to fill in the holes in their case with evidence that will only confuse and mislead the jury.

Accordingly, this Court should prohibit the government from offering this evidence in its case-in-chief.

**CONCLUSION**

For all of the foregoing reasons, Mauricio Hernandez Pineda respectfully requests that this Court deny the government's motions *in limine* for the reasons set forth herein.

Dated:  New York, New York
       June 16, 2023


                              Respectfully submitted,

                              /s/ Richard J. Ma

                              RICHARD J. MA
                              KEN WOMBLE
                              CORY GARCIA
                              Counsel for Mauricio Hernandez Pineda