Served by Classified Information Security Office
CISO: [signature]
Date: 8/11/23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

JUAN ORLANDO HERNANDEZ,
JUAN CARLOS BONILLA
VALLADARES, and
MAURICIO HERNANDEZ PINEDA,

           Defendants.

15-cr-379 (PKC)

OPINION AND ORDER

---

CASTEL, U.S.D.J.

      Defendants Juan Orlando Hernandez, who served as the President of Honduras from 2014 to 2022, Juan Carlos Bonilla Valladares, former Chief of the Honduran National Police, and Mauricio Hernandez Pineda, who was a high-ranking officer with the Honduran National Police, are charged with participating in a corrupt and violent drug-trafficking conspiracy to facilitate the importation of cocaine into the United States, possession of machineguns and destructive devices, and conspiracy to possess machineguns and destructive devices. The case is set for trial for February 5, 2024.

      Pending before the Court is the government's ex parte motion for a protective order pursuant to section 4 of the Classified Information Procedures Act ("CIPA") relating to Hernandez and Bonilla.

I.    BACKGROUND

      The government's CIPA section 4 motion seeks a protective order authorizing it to withhold certain classified material from discovery and to disclose substitutions for certain

classified materials. The motion was submitted in two parts, on April 14, 2023, and May 17, 2023.

Though the motion was submitted ex parte, the government produced its proposed substitutions to cleared counsel for the defendants. On April 10, 2023, after the Court's entry of a protective order concerning classified material as to Hernandez, (ECF 544), the government produced approximately ▇ substitutions to cleared counsel for Hernandez. On May 25, 2023, the Court entered a protective order pertaining to classified material as to Bonilla. (ECF 558.) The government has since produced the balance of its proposed substitutions to both defendants, totaling approximately ▇ substitutions.

In addition, the government has produced a subset of classified materials to cleared counsel as classified discovery, as well as certain documents that were declassified. It has also disclosed certain classified materials with redactions applied to irrelevant and non-discoverable portions of the documents, and does not seek any relief from the Court in its section 4 motion with respect to those materials. The government has also produced voluminous unclassified discovery.

The Court afforded the defendants an opportunity to "challenge any of the substitutions (or any other matter related to classified material)" in sealed submissions. (ECF 555.) The deadline for the defendants' submissions was extended on several occasions, ultimately until July 28 for Bonilla and until August 9 for Hernandez.

On July 24, 2023, cleared counsel for Hernandez requested an ex parte CIPA section 2 hearing. Thereafter, the Court directed that Hernandez may make an ex parte classified submission to address the matters described in the third sentence of the first paragraph of his July 24 letter "[a]long with" his opposition to the government's section 4 motion on August 9. (ECF

600.) Hernandez submitted a singular ex parte classified memorandum on August 9, 2023 (the "Opposition Memorandum"). Bonilla did not file any submission by his July 28 deadline.

II.     LEGAL STANDARD

"CIPA establishes procedures for handling classified information in criminal cases." United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008). The purpose of the statute is to "harmonize a criminal defendant's right to obtain and present exculpatory material . . . with the government's need to withhold information from discovery when disclosure would be inimical to national security." In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 93, 115-16 (2d Cir. 2008) (quotations, citation, and alteration omitted) (quoting United States v. Pappas, 94 F.3d 795, 799 (2d Cir. 1996); Aref, 533 F.3d at 79). In other words, CIPA "was meant to 'protect[] and restrict[] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'" Aref, 533 F.3d at 78 (quoting United States v. O'Hara, 301 F.3d 563, 568 (7th Cir. 2002)).

CIPA does not "expand the traditional rules of criminal discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense." United States v. Mostafa, 992 F. Supp. 2d 335, 337 (S.D.N.Y. 2014) (Forrest, J.) (quoting United States v. Varca, 896 F.2d 900, 905 (5th Cir. 1990)). CIPA "applies the general law of discovery in criminal cases to classified information and further restricts discovery of that information to protect the Government's national security interests." Id.

Section 4 of CIPA provides that if the discovery to be produced to a criminal defendant includes classified information, the district court may permit the government to move

ex parte to "delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove." In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d at 116; 18 U.S.C. app. 3 § 4. The Second Circuit has explained that "[t]his provision clarifies district courts' power under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders denying or restricting discovery for good cause," including "the protection of information vital to the national security." Aref, 533 F.3d at 78 (citing S.Rep. No. 96-823, at 6 (1980), as reprinted in 1980 U.S.C.C.A.N. 4294, 4299-4300; Fed R. Crim. P. 16 advisory committee's note to 1966 amendment).

In deciding a CIPA section 4 motion, a court must engage in a multipart analysis. First, "[a]s a threshold matter, the court must find that the materials constitute 'classified information' which is defined as 'any information or material that has been determined by the United States Government pursuant to an Executive order, statute or regulation, to require protection against unauthorized disclosure for reasons of national security.'" United States v. Asainov, 618 F. Supp. 3d 105, 111 (E.D.N.Y. 2022) (quoting 18 U.S.C. app. 3 § 1). "The government is permitted to make this showing 'through the submission of a declaration to that effect by a government official, as long as the declaration adequately describes the reasons for the information's classification and the harm that would result from disclosure.'" Id. (quoting United States v. Juma Khan, 08-Cr-621, 2010 WL 330241, at *1 (S.D.N.Y. Jan. 10, 2020) (Buchwald, J.)).

If the materials constitute "classified information," the court must next decide whether they would ordinarily be discoverable under Rule 16. Aref, 533 F.3d at 80; Asainov,

618 F. Supp. 3d at 111. Rule 16 requires the government to provide the defense with access to materials if they are "material to preparing the defense," are intended to be used by the government in its case-in-chief at trial, or were obtained from or belong to the defendant. Rule 16(a)(1)(E); Asainov, 618 F. Supp. 3d at 111.

Then, if the materials are discoverable under Rule 16, the court must "determine whether the state-secrets privilege applies because: (1) there is 'a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged,' and (2) the privilege is 'lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'" Aref, 533 F.3d at 80 (quoting United States v. Reynolds, 345 U.S. 1, 8, 10 (1953) (footnote omitted)).

"If the evidence is discoverable but the information is privileged, the court must next decide whether the information is helpful or material to the defense, i.e., useful 'to counter the government's case or to bolster a defense.'" Id. (quoting United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993)). "To be helpful or material to the defense, evidence need not rise to the level that would trigger the Government's obligation" to disclose exculpatory information under Brady v. Maryland, 373 U.S. 83 (1963). Id.; United States v. Mejia, 448 F.3d 436, 457 (D.C. Cir. 2006) ("[I]nformation can be helpful without being 'favorable' in the Brady sense."). "However, this standard is higher than 'a mere showing of theoretical relevance.'" Asainov, 618 F. Supp. 3d at 112 (quoting United States v. Mostafa, 7 F. Supp. 3d 334, 338 (S.D.N.Y. 2014) (Forrest, J.)). "Whether evidence is 'helpful' or 'material to the defense' is . . . within the district court's discretion." Aref, 533 F.3d at 80.

When evidence is helpful or material to the defense, "the government's privilege 'must give way . . . to [the] criminal defendant's right to present a meaningful defense.'" In re

5

Case 1:15-cr-00379-PKC   Document 643   Filed 12/20/23   Page 6 of 12

REDACTED / CLEARED FOR PUBLIC RELEASE

Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d at 124 (alteration in original) (quoting Aref, 533 F.3d at 79). However, if the evidence is neither helpful nor material to the defense, the district court has discretion to enter an order permitting the government to withhold the classified information altogether. Id. at 122 (citing Aref, 533 F.3d at 76, 80).

If, and only if, the information is helpful or material to the defense, the court must then balance the "public interest in protecting the flow of information against the individual's right to prepare his defense." Mostafa, 992 F. Supp. 2d at 338 (quoting Roviaro v. United States, 353 U.S. 53, 62 (1957)). "[T]he test to be applied involves balancing the defendant's need for the information or its value to the defendant, against the possible damage to the government's security interests from disclosure." United States v. Schulte, 17-Cr-548, 2019 WL 3764662, at *3 (S.D.N.Y. July 22, 2019) (Crotty, J.) (quoting United States v. Rahman, 870 F. Supp. 47, 52 (S.D.N.Y. 1994) (Mukasey, J.)).

Even if a court concludes that evidence is classified, discoverable under Rule 16, privileged, and helpful or material to the defense, the evidence need not necessarily be produced in its original form. Pursuant to section 4, the court may authorize the government to "substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove." 18 U.S.C. app. 3 § 4; United States v. Abu-Jihaad, 07-Cr-57, 2008 WL 346121, at *2 (D. Conn. Feb. 4, 2008); United States v. Abu-Jihaad, 630 F.3d 102, 139-40 (2d Cir. 2010) (finding no abuse of discretion with the "district court's [February 4, 2008] decision to issue a protective order pursuant to Section 4 of CIPA, including its determination . . . whether unclassified summaries or admissions are properly substituted for classified information").

6

REDACTED / CLEARED FOR PUBLIC RELEASE

In evaluating proposed substitutions, courts in this District consider whether the substitutions provide the defendant "with substantially the same ability to make their defenses as would disclosure of the specific classified information," Schulte, 2019 WL 3764662, at *5 (applying the CIPA section 6 standard to its analysis of substitutions under section 4), and whether they "strike[] the appropriate balance of protecting the national security interests of the United States and [the defendant's] rights in [the] proceeding," Asainov, 618 F. Supp. 3d at 113.

III.   DISCUSSION

The government seeks authorization to withhold certain classified materials that it has identified as not subject to discovery under Rule 16, cumulative of materials already produced in unclassified discovery, and/or neither helpful nor material to the defendants. It further requests permission to produce summary substitutions of classified materials falling into the following categories:



The Court has carefully reviewed the government's two-part ex parte submission and the exhibits thereto, as well as Hernandez's submission of August 9. Based on a review of the government's submission, which includes declarations submitted by the respective heads of

departments, the Court concludes that the materials at issue constitute "classified information." The declarations also assert the states secrets privilege and, together with the government's motion, establish a reasonable danger that disclosure would jeopardize national security. Accordingly, the Court concludes that the privilege applies to the materials that government seeks to withhold or substitute. See Aref, 533 F.3d at 80; Abu-Jihaad, 630 F.3d at 141; Asainov, 618 F. Supp. 3d at 112.

With respect to the information the government seeks to withhold in its entirety, the Court, upon careful review of the ex parte submission, concludes that the information is not discoverable under Rule 16, is cumulative of information that has already been provided to the defendants as unclassified discovery, or is neither relevant nor helpful to the defense, i.e., could not be used to counter the government's case or bolster a defense. Withholding these items is therefore proper under section 4 of CIPA. See Abu-Jihaad, 630 F.3d at 142; Asainov, 618 F. Supp. 3d at 112.

The Court concludes that the ten categories of classified materials as to which the government proposes substitutions include information potentially relevant, helpful or material to the defense. Thus, the Court must balance the defendants' rights against the government's national security interests before determining whether the information must be disclosed under section 4. Asainov, 618 F. Supp. 3d at 112. After careful review of the government's submission, the Court concludes that the substantial harm to the government's security interests that would result from disclosure of these ten categories of information outweighs the defendants' interests in obtaining the materials in their original form. Defendant Hernandez's request in his Opposition Memorandum that the Court order the government to provide the entirety of the classified discovery in its original form is thus overruled. "For reasons that are

apparent, the [C]ourt cannot discuss the specific justifications behind this determination." Id. 112 (quotations omitted) (quoting United States v. Ng Lap Seng, 15-Cr-706, 2017 WL 2693625, at *3 (S.D.N.Y. June 21, 2017) (Broderick, J.)).

The question that remains for this Court is whether the government's proposed substitutions sufficiently protect the defendants' rights as balanced against the government's national security interests. See Schulte, 2019 WL 3764662, at *5; Asainov, 618 F. Supp. 3d at 113. Defendant Hernandez's Opposition Memorandum asserts that the substitutions interfere with his ability to receive a fair trial. As to a great number of the substitutions, he principally "objects to the information being sourced generally as either "[United States Government ('USG')] reporting" or "Embassy Tegucigalpa" and requests "greater particularity" as to the provider of the information. Hernandez also objects to the identification of certain individuals as "Official" or "High ranking official" and seeks "the names of the officials, the agency with which they are associated, their titles, their actual positions within the agency, their rank (if DOD or Military) and names of the source[s] [themselves]."

Consistent with the foregoing, the unnumbered multipage Opposition Memorandum repeatedly – but inconsistently – asserts that the "court should order a more specific disclosure" where a substitution is described as "USG reporting." Hernandez has not shown why the identity of the agency that generated the classified material is helpful or material to his defense, or why his interest in obtaining such information outweighs the interest of the government in protecting national security. The Court thus overrules the objection that the government's substitutions are inadequate because they fail to identify the agency that generated the document.

However, the Court has identified several more particularized objections throughout the Opposition Memorandum, often difficult to identify, in the absence of consistent language, punctuation, or formatting, interspersed sporadically amongst counsel's re-summarization of the government's substitutions. These objections warrant further consideration. To that end, the Court will require the government to address whether it should be required to disclose the rank of any active duty commissioned officer in the United States Armed Forces who is referred to in a substitution as having a meeting or conversation with Hernandez or Bonilla. In addition, the Court will require the government to respond to Hernandez's objections to the proposed substitutions of the following items, listed in the order they appear in the Opposition Memorandum:

| Item | Objection |
|---|---|
| Bates Nos. 3452-3470 | "Executive Summary (written by whom and based on what) . . . ." |
| ■■■■ | ■■■■ |
| 482 | ". . . . A high ranking Honduran official (need disclosure) . . . ." |
| ■■■■ | ■■■■ |
| CABLES | "The government should be required to disclose who the cables are from and to whom the Cables are being sent." |

| | |
|---|---|
| October 10, 2013 | "Cable (court should order disclosure of which entity is sending the cable) . . . ." |
| November 13, 2012 | "The Court should grant JOH's request to know who the sender and recipient of the cables as without that knowledge JOHO is unable to fully use the information at trial. . . ." |
| December 20, 2013 | "JOH (now the President-Elect) and the Ambassador (court should compel disclosure of which Ambassador this is) . . . ." |
| PSYOP Intelligence Summary: March 9, 2018 (803) | ". . . . Maya Chorti has an established relationship with Guatema's Interagency Task Force Chorti. The government has provided very limited information regarding this task force and the Court should order further disclosure in keeping with the defendant's theory of defense." |
| Bates # 729 | ". . . . The government should be required to disclose all information about these programs, to the extent they have been redacted, they should be provided to the defense." |
| Bates # 1990 | "The un-redacted portions should be provided to the defense . . . ." |
| Bates # 2258-2263 | "The court should order the government to provide a fully un-redacted copy of the document. . . ." |
| Bates # 2259 | ". . . . The defense seeks the identity of the individual ('source of unknown reliability') who stated that JOH was provided helicopter airlift support to attend political rallies during his campaign.<br><br>The source of the rumor that JOH accepted bribes from Los Cahiros TCO should be disclosed (footnote 4) . . . .<br><br>The identity / exact title of the 'senior and mid-level Honduran military officers with direct and indirect access at the highest level of the Honduran armed forces with direct access but insufficient contact to evaluate veracity' who supported this claim." |
| Bates # 2260 | "All information pertaining to Operation Neptune as it was supported by JOH and the identity of the person responsible for stealing 200 of the AK-47s." |
| Bates # 2665 | ". . . . all the information about and surrounding these operations should be provided to the defense in an un-redacted form." |

Because the scope of the government's response to the Opposition Memorandum has been significantly narrowed by this Order, the date for the government's response is accelerated to September 8, 2023.

11

IV.     SECTION 5 NOTICE

Throughout the Opposition Memorandum, Hernandez includes footnotes indicating that to the extent the Court considers the August 9 submission to include his CIPA section 5 notice, he would seek to introduce the designated information at trial. The Court will allow Hernandez to supplement this information in a complete section 5 notice.

Defendants may file their CIPA section 5 notices by September 22, 2023.[1]

CONCLUSION

The government's motion pursuant to section 4 of CIPA is granted, except that the Court reserves decision with respect to the proposed substitutions enumerated in the above chart, to which the Court has directed the government to respond.

SO ORDERED.
August 11, 2023

/s/ P. Kevin Castel, U.S.D.J.
P. Kevin Castel, U.S.D.J.

---

[1] If and to the extent the Court grants further relief with regard to the materials as to which it has required a further response from the government, then it will allow defendants time to file a supplement to their section 5 notice.