# RICHARD J. MA, ESQ.

20 Vesey Street, Suite 400
New York, New York 10007
Tel. (212) 431-6938
Fax. (212) 964-2926
E-mail: richardma@maparklaw.com

January 26, 2024

*Via ECF and E-Mail*

Honorable P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Mauricio Hernandez Pineda*
              15 Cr. 379 (PKC)

Dear Judge Castel:

      As Your Honor is aware, we represent Mr. Mauricio Hernandez Pineda in the above-referenced matter, appointed pursuant to the provisions of the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A. This correspondence is submitted in further support of Mr. Pineda's motion for severance, dated January 22, 2024.

      Based upon argument at the conference of January 23, 2024, and the government's supporting cases,[1] we anticipate that the government will argue that severance of trials is not warranted in the instant matter because the mutually antagonistic defenses do not create substantial prejudice that outweighs judicial economy. However, as set forth herein, the government fails to present persuasive argument or authority against severance of trials in this matter.

      Mr. Pineda requires a separate trial from that of co-defendant Juan Carlos Bonilla Valladares ("Bonilla") because there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent a jury from making a reliable

---

[1] At the Court's direction, the government provided on January 24, 2024 the following four cases: *United States v. Cardascia*, 951 F.2d 474 (2d Cir. 1991); *United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003); *United States v. Shkreli*, 260 F.Supp.3d 247 (E.D.N.Y. 2017); and *United States v. Scott*, 637 Fed.Appx. 10 (2d Cir. 2015).

1

judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The domino effect of Mr. Bonilla's testimony presents an unacceptable risk of depriving Mr. Pineda of his due process rights to a trial by a fair and impartial jury.

This is one of the uncommon cases where defendants have mutually antagonistic and irreconcilable defenses. As confirmed at the January 23 appearance, Mr. Bonilla is prepared to testify at trial, in pertinent part, that: (i) while the other charged defendants are or may be members of the charged conspiracy, Mr. Bonilla himself was not; and (ii) the government's witnesses have colluded and conspired to wrongfully accuse Mr. Bonilla to exact revenge against Mr. Bonilla for his previous work as an official with the Honduran National Police ("HNP"). In Mr. Bonilla's testimony, it will be essential for him to establish his credibility as a witness and substantiate his law enforcement activities. Therefore, from Mr. Bonilla's vantage point, he must testify to *all* of his experience and knowledge of the alleged conspirators and drug trafficking activities, and it is essential to him that he testify as to his alleged knowledge and information of Mr. Pineda. If Mr. Bonilla does not or is not permitted to testify as to his knowledge and information of Mr. Pineda, the jury will not find him believable and will speculate as to why Mr. Bonilla excluded Mr. Pineda from his testimony. Thus, there is no limiting instruction, redaction or other measure to remedy Mr. Bonilla's testimony about Mr. Pineda. Importantly, Mr. Bonilla's testimony is especially prejudicial to Mr. Pineda because the testimony is from a law enforcement perspective and is corroborative of the government's evidence.

Next, Mr. Bonilla's defense will admit into evidence portions of Mr. Bonilla's investigation files from his tenure at HNP (the "Bonilla files"). These files contain highly prejudicial and inflammatory allegations that underscore Mr. Bonilla's testimony that Mr. Pineda: (i) received preferential treatment at HNP due to his relationship with Juan Orlando Hernandez; (ii) was affiliated with known drug-traffickers; (iii) failed a polygraph test on HNP corruption, leading to his suspension; (iv) was reinstated at HNP due to his relationship with Juan Orlando Hernandez; and (v) participated in drug trafficking activities by gathering firearms seized by law enforcement and returning them to drug trafficking organizations. However, these documents are otherwise inadmissible at this trial or at a separate trial of Mr. Pineda. Thus, at a joint trial, not only will Mr. Pineda need to defend against a second *de facto* prosecutor seated at the defense table, Mr. Pineda will also need to defend against evidence that could not be offered against him at a separate trial.

In response to Mr. Bonilla's defense, Mr. Pineda must of necessity also become a second *de facto* prosecutor, against Mr. Bonilla. We will be required to discredit Mr. Bonilla and demonstrate that his testimony and defense theory is false. Even worse, counsel for Mr. Pineda will be inclined to join the government to prove Mr. Bonilla's guilt as motive to fabricate testimony against Mr. Pineda. In light of the mutually antagonistic defenses, there will be no realistic way for a jury to find both defendants not guilty. In order to believe Mr. Bonilla's core defense, the jury will be unable to find Mr. Pineda not guilty. (*See United States v. Salameh*, 152 F.3d 88, 116 (2d Cir. 1998) (sever-

ance is appropriate where the defendant makes "a factual demonstration that acceptance of one party's defense would tend to preclude the acquittal of [the] other." (quotation omitted)).  On the other hand, Mr. Pineda will be tasked with vindicating himself of allegations from both the government and Mr. Bonilla, while also proving Mr. Bonilla guilty.

The Supreme Court in *Zafiro* presented several grounds for severance, including "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant;" when "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty;" when "evidence that is probative of a defendant's guilt but technically admissible only against a codefendant" is introduced at trial. *Zafiro*, 506 U.S. at 539.  Severance is warranted when any one factor, or a combination of factors, creates a risk that a defendant's rights will be compromised in a joint trial. *See United States v. Upton*, 856 F.Supp. 727, 736 (E.D.N.Y. 1994).

In the instant matter, the mutually antagonistic defenses as well as the conflicts likely to arise over the admission of evidence against one defendant over objections of the other compel a severance.  Even if it were more economical or efficient to hold a joint trial in this case, "no defendant should ever be deprived of a fair trial because it is easier or more economical for the government to try several defendants in one trial rather than in protracted multiple trials." *United States v. Boscia*, 573 F.2d 827, 833 (3d Cir. 1978).  Further, the prejudice to Mr. Pineda and to Mr. Bonilla will only grow over the course of a joint trial, necessitating a retrial at a huge cost in terms of time and resources.  *See United States v. Grace*, 439 F.Supp.2d 1125, 1148 (D.Mont. 2006).  Where, as here, "there is so great a likelihood of unfair prejudice" over the course of the trial, "[t]he joint trial does not serve its intended purpose of promoting judicial economy." *Id.*  The unfair prejudice that would result from a joint trial is what distinguishes this case from other cases where courts denied severance.

*United States v. Shkreli*, 260 F.Supp.3d 247 (E.D.N.Y. 2017), is guiding.  In *Shkreli*, the court severed the trials of two co-defendants to prevent substantial prejudice and jury confusion because one defendant, Evan Greebel, planned to argue that the co-defendant was guilty, while Greebel himself was a victim of the co-defendant's wrongdoing.  The court held that while antagonistic defenses or the risk of spillover prejudice were insufficient to require severance, severance *was* warranted because the court had "serious concerns that under the unique circumstances presented, trying the defendants together would present a serious risk that Shkreli will not receive a constitutionally fair trial." 260 F.Supp.3d at 256.  The court reasoned that a joint trial would have placed an unfair and heavy burden of defending against both the government and the codefendant.  Such a "double prosecution" created a "serious risk that the jury would be prevented from making a reliable judgment about guilt or innocence even with limiting instructions by the court." *Id.*  The court also noted that the frequent objections, infighting, sidebars and contentious cross-examination would disrupt the flow of the trial, lengthen the trial and

3

would likely confuse the jury. *Id.* We respectfully submit that, even if the court finds that the defenses in this matter are not mutually antagonistic sufficient to warrant severance, the court must nevertheless find, like in *Shkreli*, that the unique circumstances of this case, *including* the nature of the opposed defenses requires severance because of unfairness resulting from "double prosecutions."

* * *

Taken separately and coupled together — the mutually antagonistic and irreconcilable defenses, the serious and complicated evidentiary obstacles to a joint trial and the "double prosecutions" that will inevitably occur — this Court should sever Mr. Pineda's trial from that of Mr. Bonilla.

We thank the Court for its consideration. Should the Court have any questions or concerns, or should any further information be required, kindly contact the undersigned.

Respectfully submitted,

/s/ Richard J. Ma

Richard J. Ma, Esq.
Ken Womble, Esq.
Cory Garcia, Esq.

cc via e-mail:  A.U.S.A. Jacob H. Gutwillig
Raymond L. Colon, Esq.
Raoul Zaltzberg, Esq.